UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RES IPSA MEDIA, LLC <br> d/b/a LAW AND CHAOS PODCAST, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:25-cv-02866 (ABA) <br> * <br> * <br> * <br> * <br> * |

* * * * * * * * * * * * *

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff respectfully moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting partial summary judgment in favor of Plaintiff regarding Count 1 of the Complaint on the grounds that no genuine issue as to any material fact exists and Plaintiff is entitled to judgment as a matter of law.

In support of this Motion, the Court is respectfully referred to Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Partial Summary Judgment.

Date:   September 30, 2025

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
MD Bar #31832
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RES IPSA MEDIA, LLC<br>d/b/a LAW AND CHAOS PODCAST, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:25-cv-02866 (ABA) |
| DEPARTMENT OF JUSTICE, | * * | |
| Defendant. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Res Ipsa Media, LLC, d/b/a Law and Chaos Podcast ("Law and Chaos") commenced this litigation pursuant to the Freedom of Information Act ("FOIA") to obtain one copy of one Department of Justice ("DOJ") record which was deemed important enough to trigger a highly publicized—*by DOJ*—ethics complaint against the Chief Judge of the U.S. District Court for the District of Columbia. (Compl., Dkt. #1, ¶ 23 (filed Aug. 29, 2025).) After Law and Chaos cited, *inter alia*, the widespread media interest and the language used *by DOJ* in the ethics complaint about "integrity and public confidence" to demonstrate a compelling need for its request to be expedited (FOIA Request at 3, attached as Ex. A), DOJ denied Law and Chaos's request for expedited processing without any discussion (Ltr. from Fiorillo to McClanahan of 8/4/25, attached as Ex. B), and even affirmed that decision—again without any discussion beyond a recitation of the legal standard—on appeal (Ltr. from Troiani to McClanahan of 8/14/25, attached as Ex. D). For the reasons demonstrated herein, the Court should grant summary judgment to Law and Chaos on Count 1 and order DOJ to process its FOIA request in an expedited fashion. Due to the time sensitivity of this matter, as discussed

herein, Law and Chaos further requests that the Court adjudicate this Motion itself expeditiously once briefing has been completed.

## ARGUMENT

FOIA directs agencies to provide expedited processing of requests for records in cases in which the requester demonstrates a "compelling need." 5 U.S.C. § 552(a)(6)(E). "An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing[.]" *Id.* § 552(a)(6)(E)(iii). FOIA defines "compelling need" as, in part: "[W]ith respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II). DOJ FOIA regulations also provide for expedited processing of requests involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).[1]

Law and Chaos included the following text in its request:

> The document in question purports to memorialize evidence of a federal judge's allegedly sanctionable misconduct, which, according to Mr. Mizelle, was extreme enough to warrant a formal complaint to the Chief Judge of the D.C. Circuit. This clearly pertains to actual or alleged Federal Government activity, including both Executive Branch and Judicial Branch entities. Moreover, a complaint of this sort being filed at the direct behest of the U.S. Attorney General against the Chief Judge of a district court, which has already been the subject of several news articles, since being announced mere hours ago, is clearly a matter of widespread and exceptional media interest and raises possible questions about the government's integrity that affect public confidence. The letter itself even states, "Judge Boasberg's actions have harmed the integrity and public confidence in the integrity of the judiciary." The complaint language itself demonstrates the need for expedited processing of the document which allegedly demonstrates how Chief Judge Boasberg harmed the integrity and public confidence in the integrity of the judiciary.

---

[1] This provision is incorporated into FOIA by way of the provision authorizing expedited processing "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i)(II).

(Ex. A at 2.)[2] This language, while brief, easily meets the standard for expedited processing.

I.  **LAW AND CHAOS DEMONSTRATED A COMPELLING NEED UNDER THE SECOND TEST**

As noted above, FOIA defines "compelling need" in part as: "[W]ith respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). To demonstrate Law and Chaos's "compelling need," this analysis will parallel the language in the statute.

A.  **"A person primarily engaged in disseminating information"**

It is generally understood that news media requesters are presumed to satisfy this requirement. *See* 28 C.F.R. § 16.5(e)(3) ("[U]nder paragraph (e)(1)(ii) of this section, a requester *who is not a full-time member of the news media* must establish that the requester is a person whose primary professional activity or occupation is information dissemination, though it need not be the requester's sole occupation.") (emphasis added). Law and Chaos is a legal podcast which averages approximately 10,000 readers and listeners per episode. (Ex. A at 3.) Moreover, Elizabeth Dye also regularly serves in her professional capacity as Law and Chaos co-host as a presenter on Legal Eagle, the most popular YouTube channel focused on legal issues, with more than one million subscribers, ten million monthly views, and 100 million total video views. *See*, *e.g.*, Legal Eagle, *The DOJ Can't Stop Screwing Up (ft. Liz Dye)* (May 21, 2025), *at* https://www.youtube.com/watch?v=UfZ4-UUU3UQ (last accessed Sept. 29, 2025). Therefore, Law and Chaos is clearly a requester primarily engaged in disseminating information..

---

[2] Law and Chaos's administrative appeal further stated, "I certify under penalty of perjury that all of the statements made in support of the expedited processing of both this request and this appeal are true and accurate." (FOIA Appeal at 2, attached as Ex. C.)

3

B.      **"Urgency to inform the public"**

This Court appears to be the first in this Circuit to adjudicate FOIA's expedited processing provision, according to the undersigned's research. The D.C. Circuit, for its part, established a three-part test for determining the existence of the "urgency to inform the public" being claimed herein. *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001). Under that test, the considerations for the Court are:

1.      "whether the request concerns a matter of current exigency to the American public;"

2.      "whether the consequences of delaying a response would compromise a significant recognized interest;" and

3.      "whether the request concerns federal government activity." *Id.* at 310.

However, courts do not always strictly apply this test, often electing to treat the idea of an "urgency to inform the public" as a more holistic concept, roughly equivalent to whether the material is of "extraordinary public interest" (*Natural Res. Def. Council v. DOE*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002)); a "breaking news story" (*ACLU of N. Cal. v. DOD*, No. 06-1698, 2006 U.S. Dist. LEXIS 36888, at *18 (N.D. Cal. May 25, 2006)); or "newsworthy [and] the subject of an ongoing national debate" (*Gerstein v. CIA*, No. 06-4643, 2006 U.S. Dist. LEXIS 89847, at *18-19 (N.D. Cal. Nov. 29, 2006)).

In *Natural Resources Defense Council*, the court ordered expedited processing of a request for documents concerning energy policy and President Bush's Energy Task Force, concluding that the request concerned material of "extraordinary public interest." 191 F. Supp. 2d at 43. The court reached this decision primarily by way of noting that the September 11, 2001,

terrorist attacks, the secrecy involved in the activities of the activities of the task force, and Congressional interest in the task force demonstrated enormous public concern. *Id.* at 43-44.

In *ACLU of Northern California*, the court ordered expedited processing of a request for records concerning the TALON program involving surveillance of peaceful protests, rejecting the Government's argument that it was no longer a breaking news story because it had already been covered in the press. On that issue, the court held that "a breaking news story is one that conveys information the public wants quickly. If the story would lose value if it were delayed, it is a breaking news story." 2006 U.S. Dist. LEXIS at *18. The court pointed out that already existing coverage would "eliminate urgency only if *all* major news on the TALON program had been reported, *i.e.*, if there were nothing more to say. . . . If anything, extensive media interest usually is a fact *supporting* not *negating* urgency in the processing of FOIA request[s]." *Id.* at *21-22.

Relying on *ACLU of Northern California*, the court ordered expedited processing in *Gerstein v. CIA* of a request for records concerning "the government's ongoing efforts to address leaks of classified information." *Id.* at *18. Regarding this request, the court found that the information "[was] not only newsworthy, but was the subject of an ongoing national debate at the time [Gerstein] made his FOIA requests." *Id.* at *18-19. The fact that Congress had been considering legislation on the issue at the time of the request also persuaded the court of the need for expedition.

Taken together, all of the above cases recognize a clear relationship between the criteria set forth in *Al-Fayed* and the underlying concept of public interest, generally expressed in terms of media interest and/or Congressional interest in the information in question. Viewed through that lens, it is clear to see how the record explicitly relied upon to file a formal ethics complaint

5

against the Chief Judge of a federal district court concerns a matter of "current exigency to the American public."

Moreover, it is highly relevant that DOJ cited this record as support for its numerous accusations of Chief Judge Boasberg's impropriety and misconduct, going so far as to publicly allege that "Judge Boasberg's actions have harmed the integrity and public confidence in the integrity of the judiciary." Letter from Mizelle to Srinivasan of 7/28/25 at 4, *available at* https://www.courthousenews.com/wp-content/uploads/2025/07/FINAL-Misconduct-Complaint-7.28.pdf (last accessed Sept. 29, 2025) [hereinafter Boasberg Compl.]. Information which could demonstrate the relative truth or falsity of those allegations would clearly be "central to a pressing issue of the day," *Wadelton v Dep't of State*, 941 F. Supp. 2d 120, 123 (D.D.C. 2013). "In particular, if production is unduly delayed, both [Law and Chaos] and the public at large will be 'precluded . . . from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of' a high-profile government action." *Protect Democracy Proj. v. DOD*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) (quoting *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006)). In other words, "the requested document[] [is] sought in order to inform the public on a matter of extreme national concern. Only an informed electorate can develop its opinions and persuasively petition its elected officials to act in ways which further the aims of those opinions." *Ctr. for Pub. Integrity v. DOD*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019).

C.     **"Concerning actual or alleged Federal Government activity"**

As a court in the Southern District of New York once held, "The use of the word 'concerning' in this context is significant because it does not suggest an exclusive or definitive source of the information that might shed light on the relevant government activity. Instead, the

word 'concerning' in its ordinary meaning is much more broadly understood. Its definition is 'relating to; to be about; to bear on.'" *Bloomberg, L.P. v. FDA*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com). As with "an individual primarily engaged in disseminating information" above, the applicability of this criterion to Law and Chaos's request is plain on its face—the record requested deals expressly with the actions and/or alleged actions of the "Federal Government"—which in this case includes representatives of both the Executive and Judicial Branches. This criterion is similarly beyond dispute.

## II. LAW AND CHAOS DEMONSTRATED A COMPELLING NEED UNDER THE FOURTH TEST

As noted above, DOJ FOIA regulations also define "compelling need" in part as applying in cases involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Since Law and Chaos has already demonstrated how this request concerns a "matter of widespread and exceptional media interest," it will limit this discussion to the second criterion.

In this particular case, the Court will find all the evidence it needs in the Boasberg Complaint itself. The Court should treat this document, which was filed directly with the Chief Judge of the U.S. Court of Appeals for the D.C. Circuit, as an official DOJ statement, and accordingly treat every portion of it as an admission by DOJ. In the Boasberg Complaint, DOJ makes the following statements, using almost identical language to the regulation in question:

- "Pursuant to 28 U.S.C. § 351(a) and Rules 5, 11, and 20 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, and at the direction of the Attorney General, the Department of Justice respectfully submits this complaint alleging

7

    misconduct by U.S. District Court Chief Judge James E. Boasberg for making improper public comments about President Donald J. Trump to the Chief Justice of the United States and other federal judges *that have undermined the integrity and impartiality of the judiciary*." Boasberg Compl. at 1 (emphasis added);

- "Taken together, Judge Boasberg's words and deeds violate Canons of the Code of Conduct for United States Judges 1, 2(A), and 3(A)(6), *erode public confidence in judicial neutrality*, and warrant a formal investigation under Rule 11." *Id.* (emphasis added);

- "These comments to the Chief Justice and other federal judges in a public setting *undermined the integrity and impartiality of the judiciary*, in violation of Canons 1, 2(A), and 3(A)(6)." *Id.* at 1-2 (emphasis added);

- "By expressing his view that a particular litigant would violate court orders, Judge Boasberg *degraded public confidence in the integrity of the judiciary*." *Id.* at 2 (emphasis added);

- "This attempt to persuade other judges that arguments from governmental officials should be discounted in light of their alleged propensity to violate court orders *contravenes Canon 1 and 2(A)'s instructions that judges uphold the integrity of the judiciary and promote public confidence in the integrity of the judiciary*." *Id.* at 3 (emphasis added);

- "And it is not mere conjecture to say that Judge Boasberg's comments *eroded public confidence in the judiciary. It has already happened*." *Id.* (emphasis added);

- "These facts, read together, show that Judge Boasberg's actions have *harmed the integrity and public confidence in the integrity of the judiciary*." *Id.* at 4 (emphasis added);

- "Such conduct violates litigants' trust in an impartial judiciary and *falls below the standards that safeguard the integrity of the judiciary and public confidence in that integrity*." *Id.* (emphasis added);

- "[The Chief Judge should] [o]rder interim corrective measures during the investigation, including reassignment of all related *J.G.G. v. Trump* cases to another judge *to prevent further erosion of public confidence* while the investigation proceeds." *Id.* (emphasis added); and

- "This sequence meets—at a minimum—the classic definition of *failure to 'promote[] public confidence in the integrity and impartiality of the judiciary'* under Canon 2(A)." *Id.* at 5 (emphasis added).

To be clear, this Court need not accept DOJ's allegations about Chief Judge Boasberg as *accurate*; it need only accept that DOJ has stated them in a formal judicial filing and cannot retreat from them now when it is inconvenient. According to DOJ's *own words*, the document requested by Law and Chaos clearly raises "possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Moreover, this is doubly true if the Court considers DOJ's allegations *not* to be accurate, because that would raise definite questions about *DOJ's* integrity which affect public confidence. Either way, this case involves possible questions about some Government official's integrity which affect public confidence, whether that Government official is a Chief Judge of a U.S. district court or the DOJ Chief of Staff.

9

### III. DOJ FAILED TO DEMONSTRATE REASONED DECISIONMAKING

If the Court remains unconvinced of the need to order DOJ to grant expedited processing to Law and Chaos's request under either test, the Court should follow the lead of the 2020 decision in *Citizens for Responsibility & Ethics in Washington v. DOJ* when evaluating DOJ's arguments. In that case, Judge Jackson held that, since the Court is limited to the record before the agency in expedited processing cases, 5 U.S.C. § 552(a)(6)(E)(iii), the usual Administrative Procedure Act rules apply to the agency decisionmaking process, such that, as here, an agency's "mere recitation of the language in the [agency] provision on expedited review does not suffice as a reasoned explanation for its denial of [an expedited processing] request." 436 F. Supp. 3d 354, 359 (D.D.C. 2020). Judge Jackson concisely explained:

> [A]s the Supreme Court has emphasized, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 . . . (2011). Thus, in this context as in others, an agency is required to offer an adequate explanation for its actions so that a court is able to "evaluate the agency's rationale at the time of the decision." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 . . . (1990). Put simply, "the agency must explain why it decided to act as it did." *Butte Cty. v. Hogen*, 613 F.3d 190, 194 . . . (D.C. Cir. 2010). And, pursuant to the FOIA statute, judicial review of an agency's decision to grant or deny a request for expedited processing "shall be based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii). . . .
>
> The agency responded [to plaintiff's request for expedited processing] with a single sentence: "CREW's FOIA request is not a matter in which there exist possible questions about the government's integrity that affect public confidence." Since the agency did nothing more than parrot its own regulatory language, and offered no reasoning or analysis, its decision, as in the APA context, is entitled to little deference. *See State Farm*, 463 U.S. at 43 (explaining that while the scope of judicial review of agency action is "narrow and a court is not to substitute its judgment for that of the agency[,] [n]evertheless, the agency must . . . articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made") (internal citation omitted). . . .
>
> Here, CREW stated in its request that the Attorney General of the United States had mischaracterized some of the core conclusions contained in a report of great public significance, written by the Department's own duly appointed Special Counsel, in

10

>advance of its public release. . . . Since DOJ provided no explanation for its flat assertion to the contrary, it does not stand up to judicial review.

*Id.* at 360-61.

In this case, DOJ's statement was even less specific than the statement it made in that case. The full extent of DOJ's discussion of the matter was the following conclusory statements: (a) "This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally" (Ex. B at 1); (b) "The Director has determined that your request for expedited processing should be denied" (*id.*); (c) "Although your client's request concerns a federal government activity, you have not established that delaying a response would compromise a significant recognized interest" (Ex. D at 2); and (d) "I agree with the determination of the Director of Public Affairs that expedited treatment of your client's request is not warranted under this standard because you have failed to sufficiently demonstrate that the subject of your client's request is '[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence'" (*id.*). These responses demonstrate a clear lack of reasoned decisionmaking. They indicate nothing more than the fact that DOJ is aware that its own regulations exist. The Court should follow Judge Jackson's lead and find that DOJ failed to meet its evidentiary burden.

Should DOJ attempt to supplement these skeletal statements with an "explanation" presented in a declaration describing the alleged infirmities in Law and Chaos's request, the Court should decline any such effort to expand the record beyond "the record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii), unless DOJ provides evidence that the purported reasons were actually considered at the time of the determination, which will entail providing the *entire* administrative record and not just the correspondence. The FOIA statute

11

does not restrict the court's review to "the parts of the record before the agency that the agency selectively chooses to produce"; it requires that the Court consider the entire record before the agency. *See*, *e.g.*, *Brown v. U.S. Patent & Trademark Ofc.*, 445 F. Supp. 2d 1347, 1354 (M.D. Fla. 2006) (holding in a fee waiver context that administrative record—which "includes Plaintiff's e-mailed FOIA requests, letters from USPTO to Plaintiff, e-mails, memoranda, and handwritten notes made by USPTO employees in processing Plaintiff's requests, the documents provided by the USPTO in response to Plaintiff's first FOIA request, the USPTO estimate of charges for processing Plaintiff's second FOIA request and denial of his fee waiver request, Plaintiff's letter appealing that decision with three attachments, and the USPTO denial of Plaintiff's appeal"—was sufficient because it "appears to contain documents which would be prepared or assembled in the normal course of evaluating a FOIA fee waiver request").

Accordingly, the Court cannot perform an adequate *de novo* review of any expedited processing determination without the agency first presenting all of its evidence that it made the correct determination, and if DOJ maintains that the FOIA correspondence exchange with Law and Chaos is the extent of the administrative record, the Court must conclude that no other admissible evidence exists to support the contention that DOJ considered *any* applicable facts at the time of the determination.

### IV. THE QUESTION OF EXPEDITED PROCESSING CANNOT BE RENDERED MOOT BY MOVING LAW AND CHAOS'S REQUEST TO THE TOP OF THE QUEUE

Between now and the date when DOJ's opposition to this Motion is due, DOJ may decide to move Law and Chaos's request to the top of its first-in, first-out queue without granting its request for expedited processing. If it does so, it can reasonably be expected to argue that this renders this Motion moot, as it has in comparable cases. In anticipation of this potential

argument, Law and Chaos will briefly explain how that is not the standard for judicial review of expedited processing denials, and how nothing short of a formal grant of expedited processing or release of the record in question will moot this issue.

FOIA states that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). However, the operative term in this provision is "complete." As another court held twelve years ago:

> [T]he only scenario in which a court can properly grant relief to a FOIA requester "on the merits" of an expedited processing claim is when an agency has not yet provided a final substantive response to the individual's request for records. After that point, the timing of any further processing of an individual's request (either expeditiously or otherwise) necessarily occurs at the direction of the court—pursuant to a scheduling order, not the expedited processing provision of the FOIA. For this reason, the Court construes the phrase "complete response" in 5 U.S.C. § 552(a)(6)(E)(iv) to mean a final determination under § 552(a)(6)(A), i.e., a final administrative determination whether to release any records that are responsive to the individual's request.

*Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013).

The reason for this distinction is self-apparent. FOIA requires agencies to process requests which warrant expedited processing "as soon as practicable," 5 U.S.C. § 552(a)(6)(E)(iii); it does not require them to move them to the top of their queue and then process them at their leisure. Were DOJ allowed to claim that the question of expedited processing was moot once the request has been moved to the top of the queue, it would render the "as soon as practicable" language—not to mention the word "complete"—"insignificant, if not wholly superfluous." *Duncan v. Walker*, 533 U.S. 167, 167 (2001). Such a reading violates one of the central canons of statutory construction: "This Court's duty to give effect, where possible, to every word of a statute makes the Court reluctant to treat statutory terms as surplusage." *Id.* (citing *United States v. Menasche,* 348 U.S. 528, 538-539 (1955)). Simply put,

13

when a FOIA request is found to warrant expedited processing, the agency may not simply move it to the top of the queue and then proceed as though the request is no different from any other request. It must conduct searches in an expedited manner. It must review responsive records in an expedited manner. It must direct any agencies to which it refers requests to review the referred records in an expedited manner. And it must release records in an expedited manner. Accordingly, absent a court order, Law and Chaos's request for expedited processing will remain a valid issue in controversy until either: (a) DOJ unilaterally grants its request for expedited processing; or (b) all processing of the responsive record is complete.

## CONCLUSION

Law and Chaos has demonstrated that it has a compelling need to be granted expedited processing for its FOIA request. For the reasons described above, Law and Chaos is entitled to partial summary judgment on Count 1 and an order directing DOJ to process its request as soon as practicable. Due to the time sensitivity of this matter, as discussed herein, Law and Chaos further requests that the Court adjudicate this Motion itself expeditiously once briefing has been completed.

Date:   September 30, 2025

                                                Respectfully submitted,

                                                /s/ Kelly B. McClanahan
                                                Kelly B. McClanahan, Esq.
                                                MD Bar #31832
                                                National Security Counselors
                                                1451 Rockville Pike
                                                Suite 250
                                                Rockville, MD  20852
                                                501-301-4672
                                                240-681-2189 fax
                                                Kel@NationalSecurityLaw.org

                                                *Counsel for Plaintiff*