UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RES IPSA MEDIA,<br><br>      Plaintiff,<br><br>      v.<br><br>DEPARTMENT OF JUSTICE,<br><br>      Defendant. | Civil Action No. 1:25-cv-02866-ABA |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT**

Defendant, Department of Justice ("Defendant" or the "Department"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 56, moves to dismiss or, alternatively, for summary judgment and states:

**INTRODUCTION**

Through this lawsuit, Plaintiff seeks to expand the Freedom of Information Act ("FOIA") to require a federal agency to release a record that was created by and remains in control of an entity not covered by FOIA: the federal judiciary. Plaintiff seeks the release of "Attachment A," a record that he alleges was appended to a complaint filed by the Department against United States District Court Chief Judge James Boasberg and contains alleged statements by Judge Boasberg at a "session of the Judicial Conference of the United States." If the Court accepts Plaintiff's novel conclusion that Attachment A is an "agency record," then FOIA would be transformed from a tool to shed light on the activities, operations, and structure of federal executive branch agencies into a device to circumvent the independence of the judiciary and its ability to safeguard its confidential information. This outcome, which is inconsistent with FOIA's purpose, cannot be justified by any of the legal standards used to determine when documents in an agency's possession become

"agency records" subject to disclosure. Because Attachment A is not an "agency record," this Court should dismiss this lawsuit or enter summary judgment in favor of Defendant.

## BACKGROUND

### A.     The Judicial Conference.

Plaintiff seeks a record that reflects "Judge Boasberg's alleged statements at a session of the Judicial Conference of the United States." ECF No. 1, ¶ 9. The Judicial Conference is the national policymaking body for the federal courts over which the Chief Justice presides. *See* 28 U.S.C. § 331. It consists of the Chief Justice, the chief judge of each federal judicial circuit, the chief judge of the Court of International Trade, and a district court judge from each federal judicial circuit. *Id.* The Judicial Conference "was and remains a key means of promoting uniformity and the expeditious conduct of court business across federal courts." *America First Legal Foundation v. Roberts*, 2025 WL 3674226, at *2 (D.D.C. Dec. 18, 2025).

An early version of the bill that created the Judicial Conference (originally known as the Conference of Senior Circuit Judges) provided that the Attorney General would be a member of the Conference, but the enacted law states that only judges are members of the Conference. Henry P. Chandler, *Some Major Advances in the Federal Judicial System 1922-1947*, 31 F.R.D. 307, 326 (1963). This "avoid[s] any interference with the judiciary" from "a representative of the executive branch of the government." *Id*.

Until the creation of the Administrative Office in 1939, lower federal courts were partially administered by the Executive Branch of the United States government -- first by the Department of the Treasury, then by the Department of Interior, and then by the Department of Justice. *See* Act of Mar. 3, 1849, ch. 108, § 4, 9 Stat. 395 (1849) (fiscal oversight of the federal judiciary was exercised by the Department of the Treasury until 1849 and was then transferred to the Department

of the Interior); Act of June 22, 1870, ch. 150, § 15, 16 Stat. 162 (1870) (transferring fiscal oversight from the Department of Interior to the newly created Department of Justice). In 1939, Congress transferred administrative support for the lower federal courts from the Department of Justice to the newly created Administrative Office, under the supervision of the Supreme Court of the United States and the Judicial Conference. *See* Act of Aug. 7, 1939, Pub. L. No. 76-299, 53 Stat. 1223, 1225-26 (Aug. 7, 1939) (codified as amended at 28 U.S.C. §§ 601-10 (2018)); *America First*, 2025 WL 3674226, at *2 ("Congress ironed out" the "wrinkles" of judicial oversight "in 1939, when it established the Administrative Office of the United States Courts"). "The major purposes of the [1939] Act were to free the federal courts from their previous reliance on the Justice Department in budgetary matters, and 'to furnish to the federal courts the administrative machinery for self improvement, through which those courts will be able to scrutinize their own work and develop efficiency and promptness in their administration of justice.'" *Chandler v. Jud. Council of the Tenth Cir. of the U.S.*, 398 U.S. 74, 96 (1970) (Harlan, J., concurring) (quoting House Report).

**B.     This Action.**

On July 28, 2025, Plaintiff submitted a FOIA request, with an additional request for expedited processing, to Defendant's Office of Information and Policy ("OIP"), seeking "Attachment A," which Plaintiff alleges "heavily reference[s]" Chief Judge Boasberg's alleged comments at a "session of the Judicial Conference of the United States." ECF No. 1, ¶¶ 9-11. By letter dated August 5, 2025, the Department acknowledged receipt and denied Plaintiff's request for expedited processing because it could not "identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." *Id.*, ¶ 28. OIP assigned Plaintiff's request to an analyst on the

"complex track," explaining that because the request "require[d] a search in and/or consultation with another Office" "unusual circumstances" applied. *Id*., ¶ 35; *see also* ECF No. 6-2, p. 1.

Plaintiff appealed OIP's invocation of "unusual circumstances" and its decision to place the request on the "complex track." ECF No. 6-3, p. 1, "Description of Appeal." OIP affirmed its denial of Plaintiff's request for expedited treatment because Plaintiff neither "established that delaying a response would compromise a significant recognized interest" nor demonstrated that the subject of the request was a "matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." ECF No. 6-4, p. 2.

Plaintiff filed this action on August 29, 2025, alleging four FOIA violations: Expedited Processing Denial (First Cause of Action); Improper Placement into Complex Track (Second Cause of Action); Constructive News Media Denial (Third Case of Action); and, Constructive Records Denial (Fourth Cause of Action).[1] Plaintiff seeks an order requiring OIP to "expeditiously process its request" or place its request in Track 2; to "release the requested record;" "injunctive and/or declaratory relief as may be appropriate"; fees; and expedited consideration under 28 U.S.C. § 1657(a). *See generally*, ECF No. 1. On September 30, 2025, Plaintiff filed a Partial Motion for Summary Judgment seeking expedited processing. ECF No. 6.

On December 23, 2025, Defendant confirmed that it located "Attachment A" but determined that the "document is a record of the judiciary and therefore not an 'agency record' subject to FOIA[.]" ECF No. 15-1. The Department made this determination because the record bore "the markings of a United States Court, [was] authored by a Federal Judge, and discuss[ed]

---

[1] Though these causes of action have been rendered moot or factually unsupportable by the Department's December 23, 2025 response conveying its final determination, ECF No. 15, Plaintiff declined to amend its Complaint. Because Plaintiff seeks production of Attachment A, *see* ECF No. 1, Prayer for Relief (3), this filing focuses on whether the Department properly denied Plaintiff's request rather than Plaintiff's specific causes of action.

matters internal to the Judicial Conference of the United States" and because an assistant general counsel for the Judiciary within the Administrative Office of the United States Courts ("Counsel") confirmed that Attachment A was a Judiciary record, written by a federal judge, regarding the March 20205 Judicial Conference, and was not authorized by the Judiciary to be released, including to the Department. Exhibit A, ¶¶ 14, 17-19. Counsel stated that Attachment A was intended to be an "internal judiciary document, for a specific judiciary audience, concerning confidential judiciary matters[,]" had limited distribution within the Judiciary, and was not "ever an executive branch document." *Id*. at ¶¶ 18, 20.

The Department and the Judiciary are unaware of how Attachment A was transmitted to the Department. Counsel explained to OIP that, given the privileged nature of the document, the Judicial Conference at large would be the only entity that could approve its official release, and further confirmed that the Judicial Conference did not transmit or authorize transmission of "Attachment A" outside of the Judiciary. *Id*. at ¶ 19. Despite its efforts, the Judiciary had been unable to identify a source of the transmission of Attachment A from within the Judiciary to the Department. *Id*. OIP also attempted to determine how Attachment A came into the Department's possession using e-discovery software, but was unable to find any electronic trail indicating transmission of Attachment A into the Department's Senior Leadership Offices. *Id*. at ¶ 21.

## LEGAL STANDARDS

A.  **Rule 12(b)(1) Motion to Dismiss.**

Under FOIA, an agency need only disclose "agency records." 5 U.S.C. § 552(a)(4)(B). A court has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *ACLU v. CIA*, 105 F. Supp. 3d 35, 44 (D.D.C. 2015), *aff'd sub nom*. *ACLU v. CIA*.,

823 F.3d 655 (D.C. Cir. 2016) (observing that section 552(a)(4)(B) grants "federal district courts jurisdiction" to order production of improperly withheld "agency records"). The question of whether a document is an "agency record" is, therefore, jurisdictional. *Id.*; *see also Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150 (1980) (federal jurisdiction in a FOIA case is dependent upon a showing that an agency has (1) "improperly," (2) "withheld," (3) "agency records"); *Cheese v. Env't & Nat. Res. Div.,* 2011 WL 768891, at *2 (D. Md. Feb. 28, 2011) ("Judicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant conferred by § 552, if the agency has" improperly withheld agency records). Plaintiff has the burden of proving the Court has jurisdiction, *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), and a challenge to subject-matter jurisdiction can be raised at any time. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Easter's Lock & Access Sys., Inc. v. Internal Revenue Serv.*, 2024 WL 2922779, at *1 (D. Md. June 10, 2024) (citing Fed. R. Civ. P. 12(h)(3)).

**B.      Rule 56 Motion for Summary Judgment.[2]**

"As a general rule, [] FOIA determinations should be resolved on summary judgment." *Hanson v. U.S. Agency for Int'l Dev.,* 372 F.3d 286, 290 (4th Cir. 2004). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In meeting this burden, the agency may rely upon reasonably detailed, nonconclusory affidavits and declarations

---

[2] Notwithstanding section 552(a)(4)(B)'s reference to "jurisdiction" and the aforementioned cases, several courts have found that "FOIA disputes that pertain to the nature of the records at issue (i.e., are they 'agency records')" relate "to the merits of a plaintiff's claim that defendant has violated FOIA, rather than a court's authority to adjudicate the case." *See, e.g., Cause of Action Inst. v. Internal Revenue Serv.,* 390 F. Supp. 3d 84, 96 (D.D.C. 2019) (collecting cases and finding that a Rule 12(b)(1) motion to dismiss "based solely on the grounds that the court lacks subject-matter jurisdiction because the records are not 'agency records' necessarily fails").

submitted in good faith." *Goldner v. Soc. Sec. Admin.*, 293 F. Supp. 3d 540, 544 (D. Md. 2017) (quoting *Freeman v. Dep't of Just.*, 808 F.2d 834, 1986 WL 18310, at *2 (4th Cir. 1986) (unpublished table decision)). Agency declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Id.* at 544 (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

In FOIA cases, the Court must enter summary judgment in favor of the agency if it shows that it complied with the statute. *Democracy Forward Found. v. GSA,* 393 F. Supp. 3d 45, 51 (D.D.C. 2019) (to defeat summary judgment in a FOIA case, a plaintiff must "come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records").

## ARGUMENT

**A.     Attachment A is Not an "Agency Record."[3]**

This Court should dismiss this case or enter summary judgment in favor of Defendant because Attachment A is not an "agency record" subject to FOIA disclosure.

### i.     The Judicial Conference Falls Outside of FOIA's Reach.

Though FOIA directs "agencies" to provide certain records in response to requests, 5 U.S.C. § 552(a), the term "agency" is limited to the "Executive Branch and so-called independent agencies," and specifically excludes "courts of the United States." *America First*, 2025 WL 3674226, at *4; 5 U.S.C. § 551(1) ("agency" is "each authority of the Government of the United States" but "does not include" "the courts of the United States"); 5 U.S.C. § 552(f)(2) ("agency"

---

[3] Whether Attachment A is an "agency record" may go to the merits of the dispute or the Court's jurisdictional power. *See* FN 1, *infra*. Either way, the Court should rule in favor of Defendant.

"includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency").

In *America First*, the District Court for the District of Columbia confirmed that the Judicial Conference "fall[s] outside FOIA's ambit," explaining that because the Judicial Conference is the Judiciary's policy making body that "answers to the Supreme Court" and is "run by the Chief Justice of the United States," it is completely dissimilar from the Executive Branch or independent agencies that work to execute the law and are subject to FOIA.  2025 WL 3674226, at *5-7 (citing 5 U.S.C. § 551(1) and further observing that the "whole point" of creating the Judicial Conference was to give courts management power and reduce Executive Branch control); *see also Chandler*, 398 U.S. at 85 (explaining that the Judicial Conference was created to give judges a "statutory framework and power whereby they might put their own house in order").

Though FOIA excludes "the courts" from its coverage, *America First* establishes that this term also serves to exclude the Judicial Conference because the Judicial Conference performs "tasks that are an integral part of the judicial process."  2025 WL 3674226, at *8; *see also Mistretta v. United States*, 488 U.S. 361, 388-90 (1989) (observing that Judicial Conference "provide[s] for the fair and efficient fulfillment of responsibilities that are properly the province of the Judiciary[,]" and that, because of its "close relation to the central mission of the Judicial Branch," its activities "are consonant with the integrity of the Branch and are not more appropriate for another Branch").  FOIA's exemption for "courts of the United States," therefore, "cover[s] the entire Judicial Branch," including the Judicial Conference.  *Id*.; *Adams v. Comm. on Jud. Conduct & Disability*, 165 F. Supp. 3d 911, 918 (N.D. Cal. 2016) (noting that "FOIA specifically *exempts* the judicial branch" in a case involving a Judicial Conference Committee) (emphasis in original);

*Mayo v. U.S. Gov't Printing Off.*, 9 F.3d 1450, 1451 (9th Cir. 1993) (by excluding "the courts of the United States" in 5 U.S.C. § 551(1)(B), FOIA "excludes not only the courts themselves but the entire judicial branch"); *United States v. Casas*, 376 F.3d 20, 22 (1st Cir. 2004) (the "judicial branch is exempt from the Freedom of Information Act"); *Isiwele v. HHS,* 85 F. Supp. 3d 337, 353 (D.D.C. 2015) (same). By exempting the judicial branch from FOIA's disclosure requirements, Congress "assure[d] that the Act would not impinge upon the court's authority to control the dissemination of its documents to the public." *Warth v. Dep't of Just.,* 595 F.2d 521, 523 (9th Cir. 1979).

Here, there can be little doubt that Attachment A is from the Judicial Conference and is therefore exempt from FOIA disclosure under 5 U.S.C. § 551(1)(B) as a record of the "courts of the United States." *See* Exhibit A, ¶¶ 16-18 (discussing OIP's consultation with the Judiciary who identified Attachment As an internal Judiciary document and opposes its release). Plaintiff concedes that Attachment A contains Judge Boasberg's alleged statements and alleged "push" of an "unsolicited discussion" to the Chief Justice and other judges at "a session of the Judicial Conference of the United States." ECF No. 1, ¶¶ 9-10, 18, 19 (alleging that Attachment A contains "a summary of the Judicial Conference" including "20 pages of internal discussions"). Since the Judicial Conference does not "come under FOIA," Attachment A is not an "agency record" subject to disclosure. *America First*, 2025 WL 3674226, at *8-9 (records from "entire judicial branch" are "exempted" from FOIA); *Warth*, 595 F.2d at 523 ("as a matter of law, a court document is not an 'agency record' for purposes of the FOIA").

### ii. Defendant's Mere Possession of Attachment A Does not Subject it to FOIA.

Plaintiff appears to recognize that Attachment A is not an "agency record" under FOIA, yet nonetheless urges the Court to order Defendant to produce it because Defendant is an "agency"

in possession of Attachment A. *See* ECF No. 1, ¶ 21 (alleging that "[r]egardless of how DOJ obtained" Attachment A, "it undeniably did obtain it[,]" and therefore should produce it). Case law makes clear, however, that an agency's mere possession of a document otherwise exempt from FOIA does not automatically subject the document to disclosure. *See, e.g., Warth*, 595 F.2d at 523 ("a court document is not an 'agency record' for purposes of the FOIA even when held by the DOJ"); *Ryan v. DOJ*, 617 F.2d 781, 785 (D.C. Cir. 1980) (rejecting a "simple possession standard" for FOIA obligations in part because it could "create a severe problem whenever confidential" documents "come into the possession of an agency").

Courts have therefore concluded that congressional records, presidential papers, court documents, and personal notes are not "agency records" merely because an agency subject to FOIA possesses them. *See, e.g., Kissinger*, 445 U.S. at 157 (rejecting the notion that "mere physical location of papers and materials could confer status as an 'agency record,'" and concluding that personal papers are not "agency records" notwithstanding their location in Kissinger's government office); *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 224-25 (D.C. Cir. 2013) (because presidential records are not "agency records," they are not subject to FOIA even if maintained by entity covered by the statute); *Goland v. CIA*, 607 F.2d 339, 348 (D.C. Cir. 1978) (congressional records, which are specifically exempt from FOIA disclosures, do not become "agency records" when transmitted to the CIA). Instead, the D.C. Circuit has "adopted a standard of control rather than possession[,]" and turns to "all the facts of the case" to determine whether a requested "document has passed from the control" of the exempt-entity and "become the property subject to the free disposition of the agency with which [it] resides." *Ryan*, 617 F.2d at 785; *Tax Analysts v. DOJ*, 913 F. Supp. 599, 602 (D.D.C. 1996), *aff'd sub nom. Tax Analysts v. DOJ*, 107 F.3d 923 (D.C. Cir. 1997) (holding that "control" is not "synonymous with possession").

In *DOJ v. Tax Analysts*, the Supreme Court explained that two requirements must be met for material not subject to FOIA to become "agency records" subject to disclosure: first, the agency must have either created or obtained the record; and, second, the agency must be "in control" of the record when the FOIA request is made. 492 U.S. 136, 144 (1989); *see also ACLU v. CIA*, 823 F.3d 655, 662–63 (D.C. Cir. 2016) ("[W]hen an agency possesses a document that it has obtained from [an entity exempt from FOIA], the answer to the question [of] whether the document is an 'agency record' subject to disclosure under FOIA turns on whether [the exempt entity] manifested a clear intent to control the document").

### 1. The Department Did Not Create Nor Obtain Attachment A.

As to the first *Tax Analysts* prong, Plaintiff contends that the Department "obtained" Attachment A and, therefore, must disclose it. ECF No. 1, ¶ 21. But for an agency to "obtain" a record, it must have come into its possession in the "legitimate conduct of its official duties." *Tax Analysts*, 492 U.S at 145; *ACLU,* 823 F.3d at 662 (first prong of *Tax Analysts* satisfied because agency "lawfully obtained" record); *Marzen v. HSS*, 632 F. Supp. 785, 802 (N.D. Ill. 1986), *aff'd sub nom. Marzen v HHS*, 825 F.2d 1148 (7th Cir. 1987) ("agency records" do not include records obtained by an "agency without legal authority, express or implied, to do so").

Here, the circumstances surrounding the Judicial Conference's creation of Attachment A and Defendant's possession of the same demonstrate that it is not an "agency record" subject to FOIA. *Id*. (the manner in which the record was "obtained clearly is relevant to whether [it is] properly [an] "agency record"). Neither the Judiciary nor OIP are able to identify the method of transmission used to provide the Department with a copy of Attachment A, and the Judiciary did not authorize or facilitate its transmission to the Department. Exhibit A, ¶¶ 19, 21. Neither the

Judiciary nor the Department can confirm lawful transmission of Exhibit A from the Judiciary to the Department. *Id.*, ¶¶ 19, 21.

In *Marzen*, the Court rejected the notion that FOIA requires the disclosure of records illegitimately obtained: "why should the public have access to documents illegally obtained solely because those documents are now in the possession, custody, and control of [an] agency? Does not the very act of disclosure to the public of documents which never would have been in the public domain but for [an] illegal act . . . compound that illegality?" 632 F. Supp. at 802. So too, here, this Court should conclude that the public should not have access to a record that the Judiciary wants to keep confidential, and that the Department has neither disseminated nor published, simply because it came into the Department's possession via an unknown and unauthorized method of transmission. *Id*.

### 2. The Department does not Control Attachment A, which Remains in Control of the Judiciary.

Plaintiff likewise cannot show that the Department was "in control" of Attachment A when Plaintiff made its FOIA request, which is the second *Tax Analysts* requirement that Plaintiff must meet to compel disclosure. 492 U.S. at 144. "Normally," Courts look to "four factors to determine whether an agency has sufficient control over a document to make it an "agency record:"

> (1) the intent of the document's creator to [either] retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

But, this "test[4] does not apply to documents that an agency has [] obtained from [] a governmental entity not covered by FOIA[,]" like the Judicial Conference. *ACLU,* 823 F.3d at

---

[4] This test was used in *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency (Judicial Watch I),* 646 F.3d 924, 926 (D.C. Cir. 2011) and *Burka v. U.S. Dep't of Health & Human Servs.,* 87 F.3d 508, 515 (D.C. Cir. 1996) and is "sometimes called the *Burka* test." *Cause of Action*, 753 F.3d at 212.

662; *Cause of Action v. Nat'l Archives & Recs. Admin*, 753 F.3d 210, 213 (D.C. Cir. 2014) (four-factor test "is an uncertain guide when a governmental entity not covered by FOIA transfers records to a governmental entity that is covered"). This is because "special policy considerations . . . counsel in favor of according due deference" to the non-covered entity's "expressed intent to control its own documents." *ACLU*, 823 F.3d at 662. "Thus, when an agency possesses a document that it has obtained from" a FOIA-exempt entity, "the answer to the question" of whether the document is an "agency record" subject to disclosure "turns on whether" the exempt-entity "manifested a clear intent to control the document." *Id.*; *Tax Analysts v. DOJ*, 845 F.2d 1060, 1068 (D.C. Cir. 1988), *aff'd,* 492 U.S. 136 (1989) (whether "information originating in a FOIA-exempt entity" becomes an "agency record" depends in part on whether the creator of the information intends to retain control notwithstanding its transmission to an agency; and, whether the agency's "eventual dominion over [the information] includes the discretion to disclose it"). "This focus renders the first two factors of the" *Burka* test "effectively dispositive." *ACLU*, 823 F.3d at 662.

In *Goland*, for example, the United States Court of Appeals for the D.C. Circuit held that Congress, an entity exempt from FOIA, retained control over a congressional hearing transcript notwithstanding its release to the CIA, a FOIA-covered entity, because the transcript had the word "Secret" written on it; was retained by the CIA for "internal reference purposes only;" and, was transmitted by Congress to the CIA as part of Congress's attempt to facilitate the CIA's proper functioning. The Court's conclusion was also supported by policy: "Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules." *Id*. Subjecting the record to FOIA disclosure merely because

Congress transmitted it to the CIA would force Congress to either "surrender its constitutional prerogative of maintaining secrecy" or "suffer an impairment of its oversight role." *Id.*

Though Attachment A does not appear to contain the same "Secret" label as the *Goland* materials, the same reasoning applies and supports non-disclosure. First, an entity need not recite magic words or act in a particular way to preserve its FOIA exempt status; instead, it must simply manifest sufficient "indicia" of intent to control. *See, e.g., United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 600 (D.C. Cir. 2004). This indicia is present here, where the Judiciary has voiced its strenuous objection to the public release of Attachment A, which is "an internal Judiciary document, [created] for a specific judiciary audience, concerning confidential Judiciary matters" and was never intended to be made public, let alone become a record of the executive branch. Exhibit A, ¶¶ 18-19 (further observing that Attachment A remains under the control of the Judicial Branch). Plaintiff therefore cannot show that the Judiciary intended to relinquish control over Attachment A and/or disclose it to the Department or any other entity. *Compare* ECF No. 1, ¶ 21 (wrongfully suggesting that Attachment A is subject to FOIA "regardless of how DOJ obtained" it) *with* Exhibit A, ¶¶ 18-20 (stating that the Judicial Conference did not authorize transmission of Attachment A outside of the Judiciary and noting limited distribution even within the Judiciary).

Second, Attachment A allegedly contains statements made during the Judicial Conference, which, of course, may be privileged. *See, e.g., Adams*, 165 F. Supp. 3d at 925 (recognizing that "communications among judges [] in the performance of their judicial duties" are subject to a qualified privilege); *see also* Exhibit A, ¶ 19 (observing the "privileged nature" of Attachment A). This further supports the conclusion that the Judiciary never intended to relinquish control over Attachment A. FOIA's exclusion of the Judiciary, including the Judicial Conference, also manifests the Judicial Conference's intent to maintain control of Attachment A. Considering the

Judiciary's "authority to maintain the confidentiality of its own materials[,]" there can be no question that the Judiciary always intended to maintain control over Attachment A notwithstanding its unauthorized transmission, via unknown channels, to the Department. *United We Stand*, 359 F.3d at 597; *see also America First*, 2025 WL 3674226, at *1 (recognizing that "[j]udicial independence define[s] federal courts" as much today as when the Founders created the "Constitution' system of divided power").

C. **Additional Policy Considerations Support Non-Disclosure.**

The same "special policy considerations" that "counsel in favor of according due deference to Congress' affirmatively expressed intent to control its own documents" likewise militate against compelling disclosure here. *See, e.g., Judicial Watch*, 726 F.3d at 221.

In *Cause of Action*, a requestor sought documents created by the Financial Crisis Inquiry Commission, a legislative branch agency exempt from FOIA, which Congress had transferred to the National Archives for historical preservation purposes. 753 F.3d at 211. In refusing to compel disclosure, the D.C. Circuit declined to apply the *Burka* test, concluding instead that the documents were not "agency records" because the National Archives did not use them "in any operational way, or indeed in any way comparable to any federal agency." *Id*. at 216. Recognizing that the National Archives "may control" the documents "in a sense[,]" the Court nonetheless concluded that Congress had not intended to expose the documents to FOIA simply by depositing them with the Archives. *Id*. Similarly, here, the Department did not create Attachment A, and though Plaintiff alleges it appended Attachment A to support its complaint against Judge Boasberg, the complaint was filed on a non-public[5] docket controlled by the Judiciary, which is where

---

[5] A complaint against a judge sitting in D.D.C. is to be filed with the Judicial Council of the District of Columbia Circuit. *See Judicial Misconduct Complaint Form. See* Judicial Council of the District of Columbia Circuit Complaint of Judicial Misconduct or Disability, https://www.cadc.uscourts.gov/sites/cadc/files/JudicialMisconductComplaintForm202107.pdf (last accessed January

Attachment A was created. Since the Department did not use Attachment A "in any way comparable to any federal agency," the same should not be subject to disclosure. *Id*.

The fact that the "public cannot learn anything about agency decisionmaking" from Attachment A, such that "requiring disclosure [] would do nothing to further FOIA's purpose of opening agency action to the light of public scrutiny" likewise supports non-disclosure. *Judicial Watch*, 646 F.3d at 927; *Cause of Action*, 753 F.3d at 215 (focusing on "FOIA's key objective" of "revealing to the public how federal agencies operate"); *Democracy Forward*, 393 F. Supp. 3d at 52-53 (transition team emails not "agency records" subject to FOIA disclosure because they do not "shed any light" on government "operations of decision-making" and the public cannot "learn anything about agency decision making" from them). The contents of Attachment A, which were always meant to be confidential and remain confidential, do not open any "agency action to the light of public scrutiny." *Id*. Since "FOIA's central purpose" of ensuring that the "Government's activities be opened to the sharp eye of public scrutiny" would not be served by compelling disclosure of Attachment A, Plaintiff's request for the same should be rejected. *Id*.

Separation of powers concerns support this conclusion. *See, e.g., Judicial Watch*, 726 F.3d at 226. In *Judicial Watch*, the Court of Appeals for the D.C. Circuit declined to find that White House visitor logs were "agency records" in part because disclosing them could "substantially affect" the President's "ability to meet confidentiality with foreign leaders, agency, officials, or

---

29, 2026). "The complaint process is confidential, with limited exceptions." *See* FAQs: Filing a Judicial Conduct or Disability Complaint Against a Federal Judge at 15 (July 2021), https://www.uscourts.gov/administration-policies/judicial-conduct-disability/faqs-filing-a-judicial-conduct-or-disability-complaint-against-a-federal-judge#15-2 (last accessed January 29, 2026). "Confidentiality under the Rules is intended to protect the fairness and thoroughness of the process by which a complaint is filed or initiated, investigated (in specific circumstances), and ultimately resolved, as specified under the Rules." *See* D.C. Cir. Jud. Conduct and Jud. Disability R., ARTICLE VIII. MISCELLANEOUS RULES, part 23(a) (Jan. 1, 2021) https://www.cadc.uscourts.gov/sites/cadc/files/RulesJudicialConductAndDisability20210101c.pdf (last accessed January 29, 2026). "All files related to a complaint must be separately maintained with appropriate security precautions to ensure confidentiality." *Id*., part 23(b)(2).

members of the public[,]" thereby "render[ing] FOIA a potentially seriously congressional intrusion into the conduct of the President's daily operations." *Id*. So too here, construing the term "agency records" to extend to Attachment A or other documents containing statements made during the Judicial Conference could seriously undermine the Judiciary's protection of confidentiality and likewise constitute a "congressional intrusion" into the Judiciary's divided power. *See, e.g., America First*, 2025 WL 3674226, at *1 (explaining that the Founders "considered it essential that the judiciary remain[ ] truly distinct from both the legislature and the executive, and thus free from political winds"). As in *Judicial Watch*, this Court should "avoid substantial separation-of-powers questions" and conclude that "Congress did not intend to authorize FOIA requesters to obtain indirectly" from the Department "information that it had expressly" precluded requesters from obtaining directly from the Judiciary. 726 F.3d at 231.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court GRANT the instant Motion and dismiss or enter summary judgment in its favor.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

    */s/*
Melissa E. Goldmeier (Bar No. 18769)
Assistant U.S. Attorney
U.S. Attorney's Office, District of Maryland
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201
melissa.goldmeier@usdoj.gov
(410) 209-4855