**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RES IPSA MEDIA, LLC<br>d/b/a LAW AND CHAOS PODCAST, | * <br> * <br> * | |
| Plaintiff, | * <br> * | |
| v. | * <br> * | Civil Action No. 1:25-cv-02866 (ABA) |
| DEPARTMENT OF JUSTICE, | * <br> * | |
| Defendant. | * <br> * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S CORRECTED MEMORANDUM OF POINTS**
**AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Plaintiff Res Ipsa Media, LLC, d/b/a Law and Chaos Podcast ("Law and Chaos") filed a routine Freedom of Information Act ("FOIA") request for a single document that Defendant Department of Justice ("DOJ")—specifically, former DOJ Chief of Staff Chad Mizelle ("Mizelle")—relied upon and used to file a highly publicized complaint against Chief Judge Boasberg of the U.S. District Court for the District of Columbia ("Boasberg Complaint").

DOJ's response to this request has been anything but routine. First it declined to recognize that expedited processing was warranted despite the undeniable evidence of public interest, and it in fact opposed partial summary judgment on that count, which is now ripe for adjudication after being fully briefed.[1] (*See* Dkt. #s 6, 15, 20.) It simultaneously argued that this request for *a single 16-page document* had to be placed in the "complex" queue, which is reserved for "requests which involve voluminous records, requests for which lengthy or numerous consultations are required, or those requests which may involve sensitive records."

DOJ, *DOJ Reference Guide: Attachment B*, *at* https://www.justice.gov/oip/doj-reference-guide-attachment-b-listing-and-descriptions-department-justice-components-foia (last accessed Aug. 26, 2025).

After another month, during which the Office of Information Policy ("OIP") appears to have had one exchange with "an assistant general counsel for the judiciary within the Administrative Office" (Brinkmann Decl, Dkt. #21-2, ¶¶ 16-21 (filed Jan. 30, 2026)), DOJ issued its determination that the document it explicitly cited in an official DOJ document was not an agency record and therefore not releasable under FOIA. It then refused to file an Answer, defended that inaction, and filed a Motion asking this Court to dismiss the case based on a widely-rejected theory of subject matter jurisdiction, a functionally inapplicable test for agency control, and inadmissible and conclusory testimony attributed by DOJ's only witness to an unaffiliated third party who has not appeared before this Court. This Motion is meritless and should be denied.

## ARGUMENT

## I.    THERE IS NO QUESTION OF SUBJECT MATTER JURISDICTION

On its face, DOJ's motion is clearly a motion for summary judgment creatively styled as a "Motion to Dismiss or for Summary Judgment." The totality of DOJ's argument for why the Court should find that it lacks subject matter jurisdiction is *one paragraph* in the "Legal Standards" section describing the legal standard for a Rule 12(b)(1) motion and loosely tying it to the concept of "agency records." (Def.'s Mem. Law Supp. Mot. Dismiss or Summ. J., Dkt. #12-1, at 5-6 (filed Jan. 30, 2026) [hereinafter DOJ's Mem.].) DOJ then immediately admits that its invocation of Rule 12(b)(1) is contrary to well-established law. (*See id.* at 6 n.2 (filed Jan. 30,

---

[1] In accordance with this Court's directive (*see* Mem. Op., Dkt. #27, at 8 (filed May 26, 2026) [hereinafter Dkt. #27]) Law and Chaos will also include an abbreviated version of its legal

2026) ("Notwithstanding section 552(a)(4)(B)'s reference to 'jurisdiction' and the aforementioned cases, several courts have found that 'FOIA disputes that pertain to the nature of the records at issue (i.e., are they 'agency records')' relate 'to the merits of a plaintiff's claim that defendant has violated FOIA, rather than a court's authority to adjudicate the case.'").) DOJ never mentions subject matter jurisdiction again. Merely invoking a rule then stating that courts disagree with the invocation without making any arguments in *support* of your position is a transparent attempt to lay claim to the dilatory benefits of the rule without any justification.

DOJ's abuse of the process is further exacerbated by the fact that, while it cited to a D.C. District Court case—*Cause of Action Inst. v. IRS*, 390 F. Supp. 3d 84 (D.D.C. 2019)—for the statement that "several courts" disagreed with its interpretation, it noticeably omitted the fact that *a court in this District* also did so. *See McKenzie-El v. IRS*, No. 19-1956, 2020 U.S. Dist. LEXIS 31455, at *25-26 (D. Md. Feb. 24, 2020) (soundly rejecting agency's Rule 12(b)(1) invocation, citing *Cause of Action*, and deciding motion solely based on Rule 12(b)(6)).

Since DOJ has elected to make this meritless argument *yet again* despite the fact that it loses virtually every time it makes this argument against a party represented by an attorney,[2] Law and Chaos will recapitulate the arguments which have thoroughly demonstrated the weakness of this argument.

---

argument against mootness in this Opposition.

[2] The two local opinions that this Court identified as supporting DOJ's reading—*Emesowum v. NSA*, No. 24-360, 2025 WL 847905 (D. Md. Mar. 18, 2025), and *Pair v. Soc. Sec. Admin.*, No. 15-1458, 2016 WL 739188 (D. Md. Feb. 25, 2016) (Dkt. #27 at 7)—both involved *pro se* plaintiffs who did not meaningfully oppose DOJ's characterization of the legal question. To be fair, *McKenzie-El* was also a *pro se* case in which the plaintiff did not argue this point, but in that case Judge Hollander undertook an extensive analysis of the jurisdictional question *sua sponte*, while the other two judges only lightly touched on the matter before proceeding to the merits.

Federal court opinions have consistently identified that the word "jurisdiction" in 5 U.S.C. § 552(a)(4)(B) references a court's *remedial powers* rather than its subject-matter jurisdiction. *See, e.g., Main St. Legal Servs. v. Nat'l Sec. Council*, 811 F.3d 542, 566 (2016). The Second Circuit further explained that the Supreme Court opinions cited by DOJ to prove its jurisdictional argument did nothing of the sort:

> Admittedly, the Supreme Court has previously referred to § 552(a)(4)(B) as jurisdictional. *See United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 . . . (1989); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. at 150. In those cases, however, the Court appears to have used the term in the sense of remedial power rather than subject-matter jurisdiction. *See United States Dep't of Justice v. Tax Analysts*, 492 U.S. at 142 (discussing "jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements"); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. at 150 (discussing "[j]udicial authority to devise remedies and enjoin agencies"). Moreover, in *Steel Co.*, the Supreme Court held that prior opinions referring to statutes as "jurisdictional" without indicating that they meant subject-matter jurisdiction, or whether the jurisdictional treatment made a substantive or procedural difference, "have no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 91. Accordingly, the Court's earlier descriptions of § 552(a)(4)(B) as jurisdictional are not controlling here.

*Id.*

The D.C. Circuit further explained:

> Understanding Section 552(a)(4)(B) to implicate a court's remedial authority, rather than jurisdiction, is also consistent with FOIA case law and general principles of subject matter jurisdiction. For instance, "[t]he party invoking federal jurisdiction bears the burden of establishing" it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 . . . (1992). But in FOIA cases, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.'" *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 . . . (1989); *Aguiar v. DEA*, 865 F.3d 730, 735 . . . (D.C. Cir. 2017) (same). If Section 552(a)(4)(B) were interpreted as a limitation on subject matter jurisdiction, one of these principles would have to yield. We would have to either overrule our case law explaining that agencies bear the burden of demonstrating that the materials sought are not agency records, or create a class of cases where the plaintiff does not bear the burden of demonstrating subject matter jurisdiction. Instead, we follow the plain meaning of Section 552(a)(4)(B), which confers remedial authority to order the production of agency records.

Whether requested documents are "agency records" goes to the merits of the dispute, not the court's subject matter jurisdiction. Although Section 552(a)(4)(B) does not confer subject matter jurisdiction, the district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction over Cause of Action's appeal from the district court's final decision under 28 U.S.C. § 1291.

*Cause of Action Inst. v. OMB*, 10 F.4th 849, 854-55 (D.C. Cir. 2021).

Similarly, the Eleventh Circuit also held that the word "jurisdiction" means the ability to devise remedies rather than the ability to hear cases, meaning a dismissal based on the defendant not qualifying as an "agency" is a merits dismissal under Rule 12(b)(6), not a dismissal for lack of subject matter jurisdiction. *Statton v. Fla. Fed. Judicial Nominating Comm'n*, 959 F.3d 1061, 1064 (2020). And numerous district court cases have followed suit. Furthermore, of the cases which ostensibly support DOJ's reading, the significant majority pertain to the exhaustion of administrative remedies, which often *is* considered a question of subject matter jurisdiction. *See*, *e.g.*, *Bahrampour v. Dep't of the Army*, No. 22-710, 2023 U.S. Dist. 7612, at *4 (D. Md. Jan. 15, 2023) (*Pair* pertained to exhaustion); *Scott v. U.S. Att'y Offices*, No. 18-725, 2019 U.S. Dist. LEXIS 79726, at *9 (D. Md. May 10, 2019) (same); *Gray v. Wash. Metro. Area Transit Auth.*, No. 16-1792, 2017 U.S. Dist. LEXIS 18223, at *5 (D. Md. Feb. 8, 2017) (same).

DOJ asks this Court to go against the most reasonable reading of FOIA's jurisdictional language, while also asking for summary judgment as an alternative based on the same analysis. The only reason to do this is to delay the case, avoid filing an Answer, and encourage the Court to reverse the well-known evidentiary standard and place the burden on Law and Chaos. This Motion is vexatious and offered in bad faith, and the Court should reject it definitively.

## II.    CONVERSION TO SUMMARY JUDGMENT IS INAPPROPRIATE

Courts tend to take a dim view of motions for summary judgment, even ones thinly disguised as motions to dismiss, which are filed before a plaintiff can take discovery. *See*, *e.g.*,

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment only appropriate "after adequate time for discovery"); *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) ("Generally, summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."). While this Court "has the discretion to limit discovery in FOIA cases and to enter summary judgment on the basis of agency affidavits in a proper case," *Simmons v. DOJ*, 796 F.2d 709, 711-12 (4th Cir. 1986), this is not a case where an exercise of that discretion would be warranted. Since summary judgment would be inappropriate under any circumstances, as shown below, the Court should not further delay the case by converting DOJ's Motion to a summary judgment proceeding.

As an initial matter, almost all of the substantive testimony of DOJ's *only* declarant is inadmissible hearsay. DOJ asks this Court to conclude that the record in question is a judicial record not subject to FOIA, and to meet that burden it must show that the judiciary intended to retain control over the record (although, as noted below, that by itself is not determinative). However, rather than presenting a declaration from a representative *of the judiciary* testifying in support of this contention, DOJ only offers a declaration from a DOJ FOIA officer about *what a representative of the judiciary allegedly told her*. This is not admissible evidence.

An agency official submitting a supporting declaration or affidavit in a FOIA or administrative law case generally may not offer written testimony regarding out-of-court statements provided by third parties who are not employees of that agency, nor may they testify about actions taken by external third parties. While agency declarants may rely on hearsay when demonstrating the adequacy of an agency's search, or rely on internal information obtained via interagency consultation, "[i]t is a different matter to rely on out-of-court statements from private third-parties to justify an agency's withholding." *Humane Soc'y of the United States v. Animal &*

*Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019). *See also Brown v. Perez*, 835 F.3d 1223, 1231-33 (10th Cir. 2016) (holding that the government could not rely on a letter sent by a third-party company objecting that disclosure of certain information would cause competitive harm); *Pub. Citizen Health Research Grp. v. Nat'l Inst. of Health*, 209 F. Supp. 2d 37, 48 n.7 (D.D.C. 2006) ("Due to hearsay concerns, the Court does not rely on these letters in reaching its decision.").

The primary evidentiary barriers to such testimony are the rules against hearsay under Federal Rules of Evidence 801 and 802. In the context of government records and official statements, third-party assertions contained within agency documents constitute inadmissible "hearsay within hearsay" under Federal Rule of Evidence 805 unless an independent hearsay exception applies. *Stagman v. Ryan*, 176 F.3d 986, 997 (7th Cir. 1999). Put simply, the "assistant general counsel for the Judiciary within the Administrative Office" (Brinkmann Decl. ¶ 16) was clearly not unavailable for purposes of Rule 804, nor were the statements attributed to this person made under penalty of perjury. In fact, given that the declarant repeatedly refers to this person as "AOUSC *Counsel*," it is far from clear that this was intended to serve as testimonial evidence *at all*, as opposed to statements made by one attorney to another attorney. A fact witness does not make statements like "[it] is the position of the AOUSC that 'Attachment A' remains under control of the Judicial Branch, is confidential, and is not subject to disclosure pursuant to the FOIA" (*id.* ¶ 18) and "given the privileged nature of the document, the Judicial Conference at large would be the only entity that could approve its official release" (*id.* ¶ 19).

It is well-established that declarations offered in support of a Rule 12(b)(1) motion must be made on personal knowledge. *See, e.g.*, *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (collecting cases). Accordingly, testimony based upon "information and belief" in

such a declaration may not be considered by the Court in a Rule 12(b)(1) context. *See*, *e.g.*, *Johnson v. Lake Tahoe Partners*, No. 13-2534, 2014 U.S. Dist. LEXIS 77778, at *5 (E.D. Cal. June 5, 2014). Because the declarant does not have personal knowledge of the operations of the office about which she is testifying, she is not competent to testify about them, nor is she competent to relay information allegedly received from them. All statements attributed to the "AOUSC Counsel" are accordingly inadmissible hearsay and should be disregarded by the Court, if not stricken from the Brinkmann Declaration completely. Similarly, all legal argument contained in the Brinkmann Declaration, such as the numerous citations to case law, should be ignored or stricken. It is well-accepted that legal conclusions, unlike factual assessments, have no place in witnesses' declarations, as they "intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law." *United States ex rel. Mossey v. Pal-Tech, Inc.,* 231 F. Supp. 2d 94, 98 (D.D.C. 2002). "[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but *he may not testify as to whether the legal standard has been satisfied.*" *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) (emphasis added).

If this Court does convert this Motion into a motion for summary judgment, it should at the very least allow Law and Chaos to take limited discovery pursuant to Federal Rule of Civil Procedure 56(d) into the questions about the provenance of the record in question, which are at the core of this Motion. As the undersigned explains in the declaration attached as Ex. A, the Brinkmann Declaration is ambiguous about the efforts DOJ actually took to ascertain how DOJ obtained this record. It states that DOJ performed unspecified "electronic searches" of "DOJ leadership officials' Departmental email accounts using e-discovery software" (Brinkmann Decl.

¶ 21) but does not explain why that was the extent of its electronic searches or how it accounted for the possibility that these officials simply did not receive the record *in their Departmental email addresses*. It also states that "OIP's point of contact within OAG [has not] been able to identify how 'Attachment A' was received by the Department" (*id*.) without explaining *how* this person attempted to identify that information. Lastly, if DOJ's declarant is going to rely on the statements of an unspecified attorney working for the Administrative Office of U.S. Courts, then Law and Chaos has a right to review the correspondence between DOJ and that attorney and potentially even depose that attorney about the statements attributed to them.

## III.    THIS IS AN AGENCY RECORD

To simplify the matter before the Court, Law and Chaos voluntarily narrows the scope of this case from one sixteen-page document to *one page* of one sixteen-page document. Through the course of this litigation, it has become clear to Law and Chaos that the first fifteen pages of this report are not newsworthy, and that the only information worth its time and effort is the last page, which it believes to be the sole source of the remarks in the Boasberg Complaint. Therefore, the rest of this Opposition—and in fact this case—are going to be limited to that page alone.

There are various tests in different courts for what constitutes an "agency record," but they largely contain the same core principles. "First, an agency must 'either create or obtain' the requested materials 'as a prerequisite to its becoming an 'agency record' within the meaning of the FOIA.' . . . To restrict the term 'agency records' to materials generated internally would frustrate Congress' desire to put within public reach the information available to an agency in its decision-making processes. As we noted in *Forsham*, 'The legislative history of the FOIA abounds with . . . references to records *acquired* by an agency.'" *DOJ v. Tax Analysts*, 492 U.S.

136, 145-46 (1989) (citations omitted) (quoting *Forsham v. Harris*, 445 U.S. 169, 184 (1980)). It is undeniable that DOJ acquired this report; the only question is *how* it did so (although Law and Chaos maintains that this is still not a determinative factor).

"Second, the agency must be in control of the requested materials at the time the FOIA request is made. By control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 145. DOJ asks the Court to presume that DOJ "illegally" obtained this report, based solely on the contention that it could or would not conclusively ascertain the path of transmission. (DOJ's Mem. at 11-12.) However, the paradox of DOJ's insistence that the Court apply the presumption of good faith to a statement that the Court should presume that DOJ broke the law creates a logical conundrum. If DOJ broke the law in obtaining this report, which it then used to file a complaint against a sitting federal judge and publicized that filing, then it is not entitled to a presumption of good faith. In other words, if the Court applies the presumption of good faith to this declaration, it must conclude that it cannot apply the presumption of good faith to this declaration. In any case, absence of information about the path of transmission is not enough to compel this Court to overcome the presumption of regularity and presume that the *DOJ Chief of Staff* and the *Attorney General* illegally obtained an allegedly confidential court record. One can only imagine DOJ's reaction if a plaintiff claimed that absence of information about how the agency did something created a presumption that it broke the law.

*Tax Analysts* is in fact a perfect comparator for this case. In that case, the Supreme Court held that district court opinions in DOJ's possession were still agency records, even though DOJ argued, as here, that the district courts were not subject to FOIA. The only difference between

that case and this one is that in that case, DOJ admitted how it received the records. Here, DOJ feigns ignorance and argues that absence of evidence is evidence of absence.

In the final analysis, the Court cannot conclude, based on the record before it, that the last page of this report is not subject to FOIA. It may be true that the Administrative Office did not intend for it to be released, but contrary to DOJ's contention, this was not a record created by the Administrative Office. It was created by *one judge* who attended the conference. And *a member of the judiciary* was responsible for its further dissemination. Law and Chaos does not believe that the author was responsible for its wider dissemination, but the fact remains that *someone* with authorized access to this document was responsible for it making its way to Mizelle.

Law and Chaos provided numerous specific allegations in its Complaint demonstrating ways in which DOJ used this record—even if it was originally created as a judicial record—for its own purposes. (*See* Compl., Dkt. #1, ¶¶ 7-12, 14, 21 (filed Aug. 29, 2025) (describing ways in which DOJ expressly relied on document in filing judicial complaint, communicating with media, and making public statements).) DOJ had no compunctions at the time about using this record and widely disseminating its alleged contents; only *now* is it suddenly concerned about the judiciary's interest in keeping this record confidential. The Court should reject this gamesmanship.

## IV.    LAW AND CHAOS'S MOTION IS NOT MOOT

Regarding the pending motion for partial summary judgment on the question of expedited processing, Law and Chaos continues to maintain that this question is not moot. FOIA states that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response

11

to the request." 5 U.S.C. § 552(a)(6)(E)(iv). However, the operative term in this provision is "complete." As another court held twelve years ago:

> [T]he only scenario in which a court can properly grant relief to a FOIA requester "on the merits" of an expedited processing claim is when an agency has not yet provided a final substantive response to the individual's request for records. After that point, the timing of any further processing of an individual's request (either expeditiously or otherwise) necessarily occurs at the direction of the court— pursuant to a scheduling order, not the expedited processing provision of the FOIA. For this reason, the Court construes the phrase "complete response" in 5 U.S.C. § 552(a)(6)(E)(iv) to mean a final determination under § 552(a)(6)(A), i.e., a final administrative determination whether to release any records that are responsive to the individual's request.

*Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013).

The reason for this distinction is self-apparent. FOIA requires agencies to process requests which warrant expedited processing "as soon as practicable," 5 U.S.C. § 552(a)(6)(E)(iii); it does not require them to simply claim they are not subject to FOIA and then take their time if they are overruled by a court. Were DOJ allowed to do so, it would render the "as soon as practicable" language—not to mention the word "complete"—"insignificant, if not wholly superfluous." *Duncan v. Walker*, 533 U.S. 167, 167 (2001). Such a reading violates one of the central canons of statutory construction: "This Court's duty to give effect, where possible, to every word of a statute makes the Court reluctant to treat statutory terms as surplusage." *Id.* (citing *United States v. Menasche,* 348 U.S. 528, 538-539 (1955)). Simply put, when a FOIA request is found to warrant expedited processing, the agency may not simply avoid ever deciding the question by claiming that the records are not agency records. Once it loses in court, it must still review responsive records in an expedited manner. It must direct any agencies to which it refers requests to review the referred records in an expedited manner. And it must release records in an expedited manner. Accordingly, absent a court order, Law and Chaos's request for expedited processing will remain a valid issue in controversy until either: (a) DOJ unilaterally

12

grants its request for expedited processing; or (b) all processing of the responsive record is complete.

## **CONCLUSION**

DOJ's Motion lacks merit for a variety of reasons, and the Court should deny it and order DOJ to process and release the final page of this record. In the alternative, the Court should authorize Law and Chaos to conduct limited discovery into the provenance of the document and the manner in which it came into DOJ's possession.

Date:   July 15, 2026

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
MD Bar #31832
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*