**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RES IPSA MEDIA, LLC, d/b/a LAW AND CHAOS PODCAST,

*Plaintiff*,

v.

DEPARTMENT OF JUSTICE,

*Defendant*.

Case No. 25-cv-2866-ABA

**MEMORANDUM OPINION**

Following a meeting in March 2025 of the Judicial Conference of the United States, the national policymaking body for the federal courts, one of the judges in attendance prepared a memorandum that apparently mentioned a comment to the Judicial Conference made by another member, Chief Judge James E. Boasberg of the United States District Court for the District of Columbia. That memorandum ended up in the hands of Chad Mizelle, the now-former Chief of Staff to the U.S. Attorney General. The record in this case does not reveal how that happened. Mizelle then filed a judicial misconduct complaint against Judge Boasberg "on behalf of the Department of Justice." *In re Complaint of Jud. Misconduct*, Case No. 06-25-90173, 2025 WL 4103506, at *1 (6th Cir. Dec. 19, 2025). DOJ filed that complaint after becoming dissatisfied with Judge Boasberg's rulings in the high-profile case *J.G.G. v. Trump*, which involved the transfer of 261 individuals to El Salvador under the Alien Enemies Act. The statement by Judge Boasberg to fellow federal judges in March 2025 that DOJ claimed constituted "misconduct" was allegedly expressing "concerns that the Administration would disregard rulings of federal courts, leading to a constitutional crisis." *In re Complaint*, 2025 WL 4103506 at *3.

The DOJ/Mizelle complaint, after referring to that comment, dropped a footnote: "Attachment A at 16." "The complaint, however, did not include the attachment." *Id.* That led Plaintiff Res Ipsa Media, LLC ("Res Ipsa"), which publishes the Law and Chaos podcast, to submit a Freedom of Information Act ("FOIA") request for that "Attachment A"—the memorandum that apparently memorialized Judge Boasberg's comment to his fellow members of the Judicial Conference. DOJ denied Res Ipsa's request, contending that the document is not an "agency record"—meaning not a record of DOJ, which is subject to FOIA—but rather is a judiciary record and thus cannot be procured through FOIA. Res Ipsa brought this action seeking an order to compel production. DOJ has filed a motion to dismiss or, in the alternative, for summary judgment. DOJ also filed a declaration that partially explains the nature of the document in question, including that it was authored by a federal judge. The declaration also attests that DOJ is unaware of how the document came into its possession but it "did not find any indication that the document was officially transmitted to DOJ by the Judiciary." ECF No. 21-2 ¶ 23.

As explained below, the question of whether the memorandum at issue is an "agency record" ultimately turns on two main questions: (1) whether the judge who prepared it "manifest[ed] an intent" that the memorandum remain confidential or, instead, that it become subject to FOIA, *Am. Civ. Liberties Union v. C.I.A.*, 823 F.3d 655, 664 (D.C. Cir. 2016), and (2) whether DOJ obtained the memorandum "[i]n performing [its] official duties," *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144 (1989). It does appear likely that the author manifested an intent for the memorandum to remain confidential, and that DOJ did not obtain the memorandum in performing official duties. But the parties dispute questions of fact pertinent to both inquiries. The Court will deny DOJ's motion and allow Res Ipsa to conduct limited discovery.

## I. BACKGROUND[1]

On March 15, 2025, the federal government loaded 261 individuals onto a plane destined for El Salvador. While the plane was en route, a putative class action complaint was filed in the U.S. District Court for the District of Columbia, on behalf of those individuals and other noncitizens subject to potential removal under a Presidential Proclamation invoking the Alien Enemies Act ("AEA"). *See Trump v. J.G.G.*, 604 U.S. 670, 671 (2025); *see also J.G.G. v. Trump*, Case No. 25-cv-766, ECF No. 1 (D.D.C. Mar. 15, 2025). The case was assigned to Chief Judge Boasberg, who issued temporary restraining orders preventing removal of any of the named plaintiffs or putative class members. *See J.G.G.*, 604 U.S. at 671.

DOJ represented the federal government in the *J.G.G.* litigation. It disagreed with Judge Boasberg's initial order, and it appealed that order to the D.C. Circuit. The D.C. Circuit also rejected the government's position, denying DOJ's motion to stay on March 28, 2025. *J.G.G. v. Trump*, Case No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 28, 2025). The Supreme Court issued its decision on April 7, 2025. It did not decide whether the AEA applied to the plaintiffs in that case, or whether application of the AEA to them was constitutional. *J.G.G.*, 604 U.S. at 673. But it did rule that those plaintiffs, and any other "AEA detainees," "are entitled to notice and opportunity to be heard," and

---

[1] At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). For purposes of a summary judgment motion, the Court construes the record in the light most favorable to the non-movant (here, Res Ipsa). *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). The Court will state the facts in this section mostly as alleged in Plaintiff's complaint but will also relate the facts stated in the declaration DOJ provided with its motion, noting where those facts are disputed.

that such notice "must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id.*; *see also id.* at 674 (Kavanaugh, J., concurring) (noting that "all nine Members of the Court agree that judicial review is available" to challenge their transfers). It further ruled, however, that "[c]hallenges to removal under the AEA . . . must be brought in habeas," and thus in the districts where the persons were confined. *Id*. at 672.

On April 16, Chief Judge Boasberg found that there was "probable cause that Defendants' actions constitute contempt" based upon evidence of willful violation of his earlier temporary restraining order. *J.G.G. v. Trump*, 778 F. Supp. 3d 24, 55 (D.D.C.). That order was later vacated by the D.C. Circuit in August 2025. *J.G.G. v. Trump*, 147 F.4th 1044 (D.C. Cir. 2025). The litigation remains pending. *See J.G.G.*, Case No. 25-cv-766 (D.D.C.).

After the Supreme Court's ruling, DOJ remained aggrieved with the merits of Judge Boasberg's orders in the *J.G.G.* case. But it was unsatisfied with its appeal and the Supreme Court's order vacating Judge Boasberg's initial injunction, as well as its then-pending mandamus action seeking to vacate the contempt order. DOJ took the extraordinary step of asserting that Judge Boasberg had engaged in "misconduct." On July 29, 2025, Mizelle filed the judicial misconduct complaint at issue with the Judicial Council of the D.C. Circuit. ECF No. 1 ¶ 7; *In re Complaint*, 2025 WL 4103506, at *1.[2]

---

[2] Plaintiffs provide the following link to what they contend is Mizelle's misconduct complaint: https://www.courthousenews.com/wp-content/uploads/2025/07/FINAL-Misconduct-Complaint-7.28.pdf [https://perma.cc/VAY5-6QYF]. ECF No. 1 ¶ 8. DOJ notes that it has "not officially released a copy" of Mizelle's complaint, and declines to "confirm or deny the validity" of the copy cited by Plaintiffs. ECF No. 21-2 ¶ 4 n.1.

Mizelle's complaint was filed "on behalf of the Department of Justice." *In re Complaint*, 2025 WL 4103506, at *1; *see also* ECF No. 1 ¶¶ 7–11. On the day the complaint was filed, then-Attorney General Pamela Bondi stated that DOJ had filed it "at [her] direction." ECF No. 1 ¶ 12.[3]

DOJ's complaint was focused entirely on "a statement [Chief Judge Boasberg] allegedly made" at a meeting of the Judicial Conference a few days before the *J.G.G.* case was filed. *In re Complaint*, 2025 WL 4103506, at *2. The Judicial Conference is a twice-yearly meeting of representative federal judges across the country, who convene to consider and make recommendations regarding administrative issues facing the federal judiciary. *See Am. First Legal Found. v. Roberts,* 813 F. Supp. 3d 100, 104 (D.D.C. 2025) (citing 28 U.S.C. § 331). "According to [Mizelle's] complaint, [Chief Judge Boasberg], who is a member of the Judicial Conference, expressed 'concerns' to other members of the Conference 'that the Administration would disregard rulings of federal courts, leading to a constitutional crisis.'" *In re Complaint*, 2025 WL 4103506, at *2. "In the weeks that followed the alleged statement, according to the complaint, the judge made several rulings in the underlying litigation [*J.G.G.*] that demonstrated the judge's hostility toward the Administration." *Id.*

Following the sentence in which Mizelle purported to quote Chief Judge Boasberg's statement to his fellow members of the Judicial Conference, he included a

---

Because the Sixth Circuit's decision dismissing Mizelle's complaint summarizes the relevant allegations, the Court will rely upon that opinion rather than the publicly disseminated version of Mizelle's complaint.

[3] Citing Attorney General Pamela Bondi (@AGPamBondi), X.com (July 28, 2025 7:24 PM), https://x.com/agpambondi/status/1949974166205034753 [https://perma.cc/US8Q-N7RN].

footnote that read, "Attachment A at 16." Neither the body of the complaint nor Mizelle's footnote described what "Attachment A" was. *See id.* at *3. As explained below, it turns out that document was a memorandum or letter written by another federal judge who was present at the Judicial Conference meeting.

Chief Judge Jeffrey Sutton of the Sixth Circuit dismissed Mizelle's complaint after an initial review. *Id.* at *3 (citing 28 U.S.C. § 352, which allows a chief judge to dismiss a misconduct complaint upon expedited review that is "frivolous" and/or "lacking sufficient evidence," among other grounds). The matter had been transferred to the Judicial Council of the United States Court of Appeals for the Sixth Circuit by Chief Justice John Roberts, upon the request of the Chief Judge of the D.C. Circuit, with whom the complaint was originally filed. *Id.* The first ground for dismissal was lack of evidence. The DOJ had "identified one source of evidence, Attachment A, for the judge's statement and for the setting in which it occurred." *Id.* But, as noted above, Mizelle's complaint "did not include the attachment." *Id.* "The D.C. Circuit contacted the Department about the missing attachment and explained that, if it failed to submit the attachment, the circuit would consider the complaint as submitted," and the DOJ "did not supply the attachment." *Id.* Chief Judge Sutton accordingly concluded that the complaint should be dismissed, as "'rumor[s] and gossip that at most could [constitute] leads into possible misconduct' fail to carry a complaint." *Id.* at *4 (quoting *In re Complaint of Jud. Misconduct*, 591 F.3d 638, 646 (U.S. Jud. Conf. 2009)) (alterations omitted). Chief Judge Sutton also held that, even assuming Chief Judge Boasberg had made the comments alleged in Mizelle's complaint, they were made at a "closed-door meeting in which the communications are off the record and confidential" and thus did not violate any judicial conduct rules, and that other misconduct allegations should be

dismissed as well because they "directly relate[d] to the merits of a decision." *Id.* (quotations omitted).

Res Ipsa filed this lawsuit in August 2025 seeking a copy of the "Attachment A" document that was cited in Mizelle's complaint (but not actually attached to it). ECF No. 1. Res Ipsa alleges that Attachment A is a memorandum relating Chief Judge Boasberg's remarks. One basis for this contention is a news article "purporting to reveal the contents of Chief Judge Boasberg's comments to the Judicial Conference" in *The Federalist*, an online publication. *Id.* ¶ 17 (citing Margot Cleveland, *EXCLUSIVE: Memo Reveals D.C. Judges Are Predisposed Against Trump Administration*, The Federalist (July 16, 2025)).[4] The article, which was posted about two weeks before Mizelle filed DOJ's misconduct complaint, states that The Federalist "obtained exclusively" a memorandum by "a member of the Judicial Conference" that "summarized the March meeting, including a 'working breakfast' at which [Chief] Justice Roberts spoke," and also recounted Chief Judge Boasberg's remarks at that breakfast. *Id.* Res Ipsa contends that the memorandum referenced by The Federalist is Attachment A, based both on the description in the article and subsequent related social media posts. *Id.* ¶¶ 18–19.

In a declaration by an attorney from DOJ's Office of Information Policy ("OIP") that DOJ attached to its motion to dismiss, DOJ confirmed that Attachment A appears to be "a memorandum that bears the markings of a United States Court, is authored by a Federal Judge, and discusses matters internal to the Judicial Conference of the United States." ECF No. 21-2 ¶ 14. The declaration further states that an attorney from the Administrative Office of United States Courts ("AOUSC") confirmed that "the document

---

[4] https://thefederalist.com/2025/07/16/exclusive-memo-reveals-d-c-judges-are-predisposed-against-trump-administration/ [https://perma.cc/Z9FT-994Z].

is a Judiciary memorandum written by a federal judge regarding the meeting of the Judicial Conference in March 2025." *Id.* ¶ 17. The AOUSC is the entity that handles the nonjudicial, administrative business of the United States Courts. *See Am. First Legal Found.,* 813 F. Supp. 3d at 104; 28 U.S.C. §§ 601–613.

Res Ipsa submitted its initial FOIA request in July 2025. ECF No. 1 ¶ 23. It requested "expedited processing" and "classification as a representative of the news media." *Id.* ¶ 24. OIP denied the request for expedited processing, and affirmed its denial upon Res Ipsa's appeal. *Id.* ¶¶ 27–31. OIP also placed the request on the "complex" track, to which Res Ipsa also objected. *Id.* ¶¶ 35–38. Res Ipsa filed the instant complaint shortly thereafter, asserting four claims: (1) "Expedited Processing Denial"; (2) "Improper Placement into Complex Track"; (3) "Constructive News Media Denial"; and (4) "Constructive Records Denial." *Id.* 22–56. Prior to DOJ filing an answer or response to the complaint, Res Ipsa moved for partial summary judgment on its expedited processing claim. ECF No. 6. That motion is fully briefed. ECF Nos. 15, 20.

Prior to the conclusion of briefing on Res Ipsa's partial summary judgment motion—and still prior to DOJ's filing of an answer or response—the OIP sent Res Ipsa a letter dated December 23, 2025, containing its "final response" to the FOIA request. ECF No. 21-2 at 12. The letter states that OIP had "located the requested document" and "determined that this document is a record of the judiciary and therefore is not an 'agency record' subject to the FOIA." *Id.* The declaration does not state where it had "located" the memo.

Following that update, DOJ filed the instant motion to dismiss for lack of jurisdiction or in the alternative for summary judgment. ECF No. 21. The declaration that DOJ had filed was by Vanesa Brinkmann, a Senior Counsel at OIP "responsible for

supervising the handling of [FOIA] requests subject to litigation." ECF No. 21-2 ¶ 1 (hereafter, the "Declaration" or the "Brinkmann Declaration"). The Declaration states that OIP initially reviewed Attachment A and "observed" that it was a memorandum by a federal judge discussing internal Judicial Conference matters. *Id.* ¶ 14. OIP also observed that "the document bore no indicia that the [DOJ] modified the document in any way," and thus Attachment A "appeared to be a Judiciary document on its face." *Id.* Given this observation, OIP contacted "an assistant general counsel for the Judiciary within the Administrative Office," referred to as the "AOUSC Counsel." *Id.* ¶ 16.

According to the Brinkmann Declaration, the AOUSC Counsel confirmed that Attachment A was authored by a federal judge and pertained to a March 2025 meeting of the Judicial Conference. *Id.* ¶ 17. The AOUSC Counsel further "conveyed to OIP, in no uncertain terms, the Federal Judiciary's strenuous objection to the Department's release of 'Attachment A,'" noting that the memorandum "concern[ed] confidential Judiciary matters and is not now, nor was it ever an Executive Branch document." *Id.* ¶ 18. The AOUSC's position, as related by its counsel to OIP, is that "'Attachment A' remains under the control of the Judicial Branch, is confidential, and is not subject to disclosure pursuant to the FOIA." *Id.* Additionally, the AOUSC Counsel articulated to OIP that it had "not been able to identify a source of transmission of 'Attachment A' from within the Judiciary to the [DOJ]." *Id.* ¶ 19. The document was "not officially transmit[ted]" and the Judiciary did not "authorize the transmission of 'Attachment A' to the [DOJ] or any external recipient." *Id.* The AOUSC's position was that "given the privileged nature of the document, the Judicial Conference at large would be the only entity that could approve its official release," and noted that "dissemination" of Attachment A had "been very limited even with the Judiciary." *Id.* ¶¶ 19–20.

OIP performed its own search to attempt to learn how Attachment A had fallen into DOJ's possession. But "[s]earches conducted of DOJ leadership office officials' Departmental email accounts using e-discovery software revealed no electronic trail indicating transmission of 'Attachment A' . . . nor has OIP's point of contact within [the Office of the Attorney General] been able to identify how 'Attachment A' was received by the Department." *Id.* ¶ 21. Accordingly, OIP concluded that the Judiciary "at no point intended to relinquish control of the document" and OIP "did not find any indication that the document was officially transmitted to DOJ by the Judiciary." *Id.* ¶¶ 22–23. These conclusions supported OIP's decision that Attachment A was not an agency record and that Res Ipsa's request should be denied. (There is no evidence in the record of this case that DOJ has asked Mizelle how he obtained the document.)

Instead of filing an opposition to DOJ's motion, Res Ipsa filed a motion to compel DOJ to file an answer, contending that the jurisdictional argument in DOJ's motion to dismiss was frivolous and thus disguised what was, in reality, a motion for summary judgment. ECF No. 24. The Court denied that motion and ordered the parties to continue briefing DOJ's motion to dismiss or for summary judgment. ECF No. 27, 28; *see also Res Ipsa Media, LLC v. Dep't of Just.*, Case No. 25-CV-2866-ABA, 2026 WL 1465478 (D. Md. May 26, 2026). In its opinion accompanying the denial, the Court noted explicitly that it "may ultimately choose to convert DOJ's motion to a motion for summary judgment, as DOJ proposes in the alternative," and so "Res Ipsa should consider its opposition to be its opportunity to present material pertinent to a summary judgment motion and, if appropriate, to file a Rule 56(d) declaration." *Res Ipsa Media*, 2026 WL 1465478, at *4.

The parties finished briefing DOJ's motion, and the Court held a hearing on August 25, 2026. ECF Nos. 34, 40. In its opposition brief, Res Ipsa voluntarily narrowed its claim to seek only the final page of Attachment A, contending that the last page contains the summary of Chief Judge Boasberg's remarks. ECF No. 34 at 9. Res Ipsa also provided a declaration pursuant to Rule 56(d) stating that it is unable to defend against DOJ's motion without further information. ECF No. 34-1. Ryan P. Mulvey filed a motion for leave to file an *amicus curiae* brief in support of Res Ipsa, which contained the proposed brief as an attachment. ECF No. 37. The Court will grant that motion and has considered the proposed amicus brief.

## II. STANDARD OF REVIEW

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the question of whether the court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "The burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010). "[A] defendant may challenge subject matter jurisdiction in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* Alternatively, rather than challenge the sufficiency of the complaint as pled, a defendant may contend that the complaint's jurisdictional allegations are not true. In this mode of

challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* "Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

Res Ipsa has also moved, in the alternative, for summary judgment. Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense—or the part of [any] claim or defense"—by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a moving party carries this burden, then the Court will award summary judgment unless the non-moving party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [opposing party's] position,"

however, is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

"Motions for summary judgment are a particularly common vehicle for resolving FOIA claims." *Goldner v. Soc. Sec. Admin.*, 293 F. Supp. 3d 540, 544 (D. Md. 2017). While the general summary judgment standard is the same in a FOIA case as any other, courts "may rely upon reasonably detailed, nonconclusory affidavits and declarations submitted in good faith." *Id.* (quoting *Freeman v. U.S. Dept. of Justice*, 808 F.2d 834, 1986 WL 18310, at *2 (4th Cir. 1986)). This is partly because "[i]t is well-established that discovery may be greatly restricted in FOIA cases." *Heily v. U.S. Dep't of Com.*, 69 F. App'x 171, 174 (4th Cir. 2003). And "[w]hen the courts have permitted discovery in FOIA cases, it generally is limited to the scope of the agency's search and its indexing and classification procedures." *Id.*; *see also Cole v. Fed. Emergency Mgmt. Agency*, 340 F.R.D. 485, 487 (D.D.C. 2022) ("[W]hether a thorough search for documents has taken place and whether withheld items are exempt from disclosure are permissible avenues for discovery.") (quoting *Niren v. I.N.S.*, 103 F.R.D. 10, 11 (D. Or. 1984)). Accordingly, "agency declarations are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Goldner*, 293 F. Supp. 3d at 544 (quotations omitted); *see also Heily*, 69 F. App'x at 173 ("The court is entitled to accept the credibility of [agency] affidavits, so long as it has no reason to question the good faith of the agency."). "To prevail over this presumption, a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." *Heily*, 69 F. App'x at 173.

## III. DISCUSSION

"The Freedom of Information Act was enacted to maintain an open government and to ensure the existence of an informed citizenry 'to check against corruption and to hold the governors accountable to the governed.'" *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1245 (4th Cir. 1994) (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978)). More specifically, the "basic purpose" of the statute is "to open agency action to the light of public scrutiny." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 772 (1989) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)). But not all parts of the federal government are subject to FOIA. Only "agencies" are, 5 U.S.C. § 552(a), which FOIA defines as "each authority of the Government of the United States[.]" 5 U.S.C. § 551(1). As pertinent here, there is no dispute that although DOJ is an "agency" for FOIA purposes, neither the U.S. Courts, of which the author of the document in question undisputedly is a judge, nor the Judicial Conference, a meeting of which the document undisputedly memorialized, are "agencies" for FOIA purposes. 5 U.S.C. § 551(1)(B) (providing that "agency" under FOIA does not include "the courts of the United States"); *Am. First Legal Found.*, 813 F. Supp. 3d at 109 ("[C]ourts consistently reject arguments that either the Administrative Office [of the United States Courts] or the Judicial Conference qualifies as an executive agency subject to FOIA."). The core question here is whether the document in question *became* a DOJ "agency record" either when Mizelle received it (via means that are not in the record) or when DOJ referred to it in its misconduct complaint.

FOIA confers jurisdiction on district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). To prevail here,

Res Ipsa must show that (1) the document in question is an "agency record," (2) the agency "withheld" it, and (3) the agency's withholding was "improper." *See Tax Analysts*, 492 U.S. at 142.

### A. Jurisdiction

As noted above, the primary dispute in this case pertains to the first requirement: whether Attachment A is an "agency record." But there is also a threshold question: is the "agency record" question one of a court's jurisdiction over a case or the merits of a FOIA claim?

As quoted above, FOIA refers to a federal court's "jurisdiction" in the provision that contains the agency record requirement. 5 U.S.C. § 552(a)(4)(B); *see also Tax Analysts*, 492 U.S. at 142 ("Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements."). But as then-District Judge Ketanji Brown Jackson explained in *Cause of Action Institute v. Internal Revenue Service*, "notwithstanding section 552(a)(4)(B)'s reference to 'jurisdiction[,]' Courts have long considered FOIA disputes that pertain to the nature of the defendant entity (i.e., is it an 'agency'?) or the nature of the records at issue (i.e., are they 'agency records'?) to relate to the merits of a plaintiff's claim that the defendant has violated the FOIA, rather than a court's authority to adjudicate the case." 390 F. Supp. 3d 84, 96 (D.D.C. 2019); *see also McKenzie-El v. Internal Revenue Serv.*, Case No. 19-cv-1956-ELH, 2020 WL 902546, at *10 (D. Md. Feb. 24, 2020) ("Despite the presence of jurisdictional language in 5 U.S.C. § 552(a)(4)(B), courts have rejected the contention that the failure to establish a statutory prerequisite to a FOIA claim strips a court of subject-matter jurisdiction, concluding instead that the claim fails as a matter of law under Rule 12(b)(6)."); *see also* ECF No. 37-1 at 6–10 (amicus brief, collecting

cases from the D.C., Second, and Eleventh Circuits holding that the agency records question is non-jurisdictional). The Fourth Circuit has yet to address whether the "agency record" inquiry goes to the merits of a FOIA claim, or a court's power to hear it.

The Court need not and does not resolve the question at this juncture because regardless of the outcome, limited discovery is warranted. As explained above, a Rule 12(b)(1) motion can attack jurisdiction facially or based upon disputed or additional facts. *See Kerns*, 585 F.3d at 192–93. DOJ's jurisdictional argument is a factual one, as it has filed a declaration through which it contends that facts related to the intent of Attachment A's author and the Department's means of acquisition render the document not an agency record. When faced with a factual dispute related to discovery, a district court may "'go beyond the allegations of the complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219) (emphasis in original). But "'where the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' a presumption of truthfulness should attach to the plaintiff's allegations" because "the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action." *Id.* at 193 (quoting *Adams*, 697 F.2d at 1219). In that scenario a court must "afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Id.*; *see also Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 362 (M.D.N.C. 2022) ("[B]ecause of the significant overlap between the jurisdictional issues and the merits of Plaintiffs' allegations, this court finds that Plaintiffs should be afforded the opportunity to conduct discovery before ruling on subject matter jurisdiction."). These standards apply similarly

in FOIA cases, though with the understanding, as articulated above, that discovery in general is limited regardless of whether it goes to jurisdiction or the merits. *See Goldner*, 293 F. Supp. 3d at 544 ("As in any review of a summary judgment motion, if sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then the motion should be denied.").

For the reasons explained below, the Court concludes that there is insufficient evidence in the record to determine conclusively whether Attachment A is an agency record. The agency record question is the central issue in the case. Thus, applying the standards articulated above, Res Ipsa is entitled to limited discovery regardless of whether the "agency record" issue is jurisdictional. *See Heily*, 69 F. App'x at 174.

**B. Agency record**

As explained above, FOIA provides that district courts may only compel disclosure of documents that are "agency records." 5 U.S.C. § 552(a)(4)(B). But the term "agency record" is not defined in FOIA. Instead, the Supreme Court has developed a two-part test to guide the agency record inquiry. "First, an agency must 'either create or obtain' the requested materials." *Tax Analysts*, 492 U.S. at 144 (quoting *Forsham v. Harris*, 445 U.S. 169, 182 (1980)). "Second, the agency must be in control of the requested materials at the time the FOIA request is made." *Id.* The parties dispute whether DOJ "obtained" Attachment A and whether it was under DOJ's "control" (neither side contends that DOJ "created" Attachment A). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records.'" *Id.* at 142 n.3; *see also Ethyl Corp.*, 25 F.3d at 1245 (the agency withholding the requested document "bears the burden of demonstrating" that the plaintiff is not entitled to it under FOIA).

**i. Obtain**

At the time Mizelle—then the Chief of Staff to the Attorney General—filed the (now-dismissed) misconduct complaint and did so on behalf of DOJ, he possessed the document at issue. As DOJ's declarant explains, that document "is a memorandum that bears the markings of a United States Court, is authored by a Federal Judge, and discusses matters internal to the Judicial Conference of the United States" and thus "appear[s] to be a Judiciary document on its face." ECF No. 21-2 ¶ 14. Res Ipsa has no basis to dispute that characterization (though it does not concede that that characterization is accurate).[5]

The current record in this case is murky, to say the least, with respect to how Mizelle ended up in possession of a "Judiciary document," "authored by a Federal Judge," that "discusses matters internal to the Judicial Conference of the United States." *Id.* ¶ 14; *see also id.* ¶ 17 (recounting report from AOUSC Counsel "that the document is a Judiciary memorandum written by a federal judge regarding the meeting of the Judicial Conference in March 2025"). And according to Ms. Brinkmann, both DOJ and the AOUSC tried to figure that out. On the judiciary side, "the Judiciary made efforts to identify how 'Attachment A' ended up in the possession of the Department and has not been able to identify a source of transmission of 'Attachment A' from within the

[5] The Court notes that DOJ's declarant, Vanessa R. Brinkmann, is a career public servant who has been "responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP . . . since 2008." ECF No. 21-2 ¶ 1. "The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from OIP's FOIA client offices in DOJ, specifically the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (OPA)." *Id.*

Judiciary to the Department." *Id.* ¶ 19. The judiciary (through the AO) also confirmed that "the Judiciary did not officially transmit or authorize the transmission of 'Attachment A' to the Department or any external recipient," and that "dissemination of the document . . . has been very limited even within the Judiciary." *Id.* ¶¶ 19–20. On the DOJ side, Ms. Brinkmann stated that OIP "conducted electronic searches" of "DOJ leadership office officials' Departmental email accounts using e-discovery software"—a search that "revealed no electronic trail indicating transmission of 'Attachment A' into the Department, nor has OIP's point of contact within [the Office of the Attorney General] been able to identify how 'Attachment A' was received by the Department." *Id.* ¶ 21. The record does not indicate, however, what investigation DOJ has conducted beyond that search of "DOJ leadership office officials' Departmental email accounts" to determine how the judiciary record came into the possession of Mizelle and/or other DOJ officials. *Id.*

Those are the facts in the record pertinent to whether or how DOJ came into possession of the document. But do those circumstances establish that DOJ "obtained" the document rendering it a *DOJ* "agency record"?

The seminal Supreme Court decision in this area is *Tax Analysts*, so the analysis for answering that starts there (given that the text of FOIA does not answer the question). In *Tax Analysts*, the documents at issue were opinions issued by federal courts in civil tax cases. Those opinions were publicly available, but at the time (the case was filed in 1985), obtaining copies of opinions that were not designation for publication in official reporters was far more difficult than it is today. Because the Tax Division "represents the Federal Government in nearly all civil tax cases in the district courts, the courts of appeals, and the Claims Court," it "receive[d] copies of all opinions and orders

issued by these courts in such cases." 492 U.S. at 138. Having received those opinions through its official duties as counsel in those cases, it compiled and distributed copies of those decisions for "the Tax Division's staff attorneys," with original documents maintained in "the official files kept by the Department." *Id.*

Tax Analysts, the requester in that case, "publishe[d] a weekly magazine, Tax Notes, which report[ed] on legislative, judicial, and regulatory developments in the field of federal taxation to a readership largely composed of tax attorneys, accountants, and economists." *Id.* at 139. "Tax Notes provide[d] summaries of recent federal-court decisions on tax issues." *Id.* To facilitate its preparation of Tax Notes given the difficulty, delay and expense of "request[ing] copies of the decisions noted therein from the clerks of the 90 or so district courts around the country and from participating attorneys," Tax Analysts "filed a FOIA request in which it asked the Department to make available all district court tax opinions and final orders received by the Tax Division earlier that month." *Id.* "The Department denied the request on the ground that these decisions were not Tax Division records." *Id.*

Prior to *Tax Analysts*, the Supreme Court had already decided that for a document to constitute an "agency record" for FOIA purposes, the two requirements described above must be satisfied: that the agency "create[d] or obtain[ed]" the document, and "control[led] . . . the requested materials at the time the FOIA request [was] made." *Id.* at 144–45. In analyzing the first requirement ("create or obtain"), the Supreme Court in *Tax Analysts* focused its inquiry on whether an agency subject to FOIA (there, DOJ) came into possession of the document in question "[i]n performing [its] official duties." *Id.* at 144. In articulating that standard, the *Tax Analysts* Court cited *Chrysler Corporation v. Brown,* which explained that FOIA was not limited to

documents *created* by an "agency," but also documents received by an agency in the ordinary course of its work, such as documents "submitted by private entities seeking Government contracts or responding to unconditional reporting obligations imposed by law." 441 U.S. 281, 292 (1979). Thus, *Tax Analysts* suggests that an agency can only have "obtained" a document—rendering it *that* agency's record—if the agency acquired the document "[i]n performing [its] official duties." *Tax Analysts*, 492 U.S. at 144.

Here, DOJ claims that it did not obtain the judicial memorandum at issue in performing its official duties. As noted above, DOJ bears the burden to show "that the materials sought are not 'agency records.'" *Tax Analysts*, 492 U.S. at 142 n.3. The difficulty at this stage, however, is there is no evidence in the record about *how* Mizelle came into possession of the judicial memorandum. DOJ contends that "it came into the Department's possession via an unknown and unauthorized method of transmission." ECF No. 21-1 at 12. It even suggests that Mizelle's acquisition of the document may have been "illegitimate[]." *Id.* ("In *Marzen* [*v. HSS*, 632 F. Supp. 785, 802 (N.D. Ill. 1986)], the Court rejected the notion that FOIA requires the disclosure of records illegitimately obtained."). Res Ipsa does not concede that DOJ obtained the memorandum through an "unauthorized method" because it does not have visibility into how the document ended up in DOJ's possession: "[Res Ipsa] does not believe that the author was responsible for its wider dissemination, but the fact remains that *someone* with authorized access to this document was responsible for it making its way to Mizelle." ECF No. 34 at 11. But that articulation also does not squarely address the *Tax Analysts* standard: the question pertinent to whether DOJ "obtained" the document is not whether "someone with authorized access to this document was responsible for it making its way to Mizelle," but

rather whether DOJ obtained it "[i]n performing [its] official duties." *Tax Analysts*, 492 U.S. at 144.

Res Ipsa, in its complaint, alleges that DOJ did "obtain" the memorandum, and used it in filing a complaint on behalf of the agency. ECF No. 1 ¶ 21. As noted, DOJ has filed a motion to dismiss and for summary judgment. With respect to DOJ's motion to dismiss, the Court must accept Res Ipsa's allegations and the reasonable inferences therefrom as true. It is reasonable to infer—at least at the pleading stage—that a document possessed by the Attorney General's Chief of Staff and used to file a misconduct complaint "on behalf of the Department of Justice," *In re Complaint*, 2025 WL 4103506, at *1, was obtained in the course of Mizelle performing official duties. Those allegations may turn out to have been incorrect or incomplete, or that inference unsupported; the evidence may reveal that the manner in which Mizelle obtained the memorandum did not involve the performance of "official duties," *Tax Analysts*, 492 U.S. at 144. But Res Ipsa's allegations pertinent to the "obtain" prong are sufficient to survive the motion to dismiss aspect of DOJ's motion.

The Court must also view the "obtain" prong through the lens of Rule 56, as DOJ has moved in the alternative for summary judgment. As noted above, DOJ bears the burden to show that the materials "are not 'agency records,'" meaning that it must show that it did not "obtain" them and/or did not "control" them. *Tax Analysts*, 492 U.S. at 142 n.3. There are genuine disputes of fact that are material to the "obtain" issue. And Res Ipsa has properly invoked Rule 56(d), contending that adjudication of DOJ's motion for summary judgment is premature until the parties take limited discovery to ascertain "the provenance of the record in question," and "the efforts DOJ actually took to ascertain how DOJ obtained this record" including whether it "accounted for the

possibility that these officials simply did not receive the record *in their Departmental email addresses*." ECF No. 34 at 8–9. Res Ipsa is not entitled to discovery as broad as it states it will seek, *see id.*, though the Court need not and does not at this time define the precise contours of permissible limited discovery. The Court also does not decide whether an *in camera* submission will be permitted in addition to or in lieu of discovery, in the event DOJ believes, for example, that the document(s) or information revealing how DOJ obtained the document would reveal the contents of the memorandum at issue; that also is a question the Court leaves for another day. But what is clear is that in the absence of at least some limited information pertinent to whether Mizelle was engaged in "official duties" when he obtained the memorandum, DOJ has not shown that it is entitled to summary judgment on the question of whether DOJ "obtained" the memorandum at issue within the meaning of *Tax Analysts*.

Res Ipsa does articulate an alternate theory of "obtain": that a document can become an "agency record" for FOIA purposes even if the agency obtained the document outside of the agency's performance of its "official duties." Res Ipsa argues that if an agency "uses" a document in the course of its official duties, the document becomes an "agency record" even if the agency did not *obtain* the document through the performance of official duties. *See* ECF No. 34 at 11 (arguing that the memorandum is an "agency record" because "DOJ used this record—even if it was originally created as a judicial record—for its own purposes"). Particularly in the context of documents transmitted from a part of the government that Congress exempted from FOIA (such as the judiciary) to another part that falls within FOIA's purview (such as DOJ), and informed by the D.C. Circuit's approach to the "control" element as discussed below, *see* § III.B.ii, *infra*, the Court concludes that Res Ipsa likely will only be able to establish

that the memorandum became a DOJ "record" if DOJ "obtained" the document "[i]n performing [DOJ's] official duties." *Tax Analysts*, 492 U.S. at 144. But because the Supreme Court in *Tax Analysts* was not faced with a document obtained through means other than the performance of an agency's official duties, and because there are genuine disputes of fact under the "official duties" standard, the Court reserves deciding whether an agency can be shown to have "obtained" a document for FOIA purposes if it came into possession of a document through means other than "performing [its] official duties," *see Tax Analysts*, 492 U.S. at 144, or whether official "use" alone renders a document an "agency record" for purposes of 5 U.S.C. § 552(a)(4)(B).

**ii. Control**

In addition to creating or obtaining a document, an agency must "control" the document at the time of the request for it to be an agency record. As with respect to the "create or obtain" prong, the Court begins with the Supreme Court cases analyzing the "control" requirement.

In *Kissinger v. Reporters Committee for Freedom of the Press*, the plaintiffs sought transcripts of phone calls made by Henry Kissinger in his capacity as Assistant to the President for National Security Affairs (which he held from 1973–1975 while simultaneously serving as Secretary of State). 445 U.S. 136, 145 (1980). Though the Office of the President is not covered by FOIA, the transcripts had been "physically taken to Kissinger's office at the Department of State," which *is* covered by FOIA. *Id.* at 157. The requesters contended that the transcripts *became* "agency records" when the transcripts were moved from the White House to the State Department. The Supreme Court saw "little discussion or analysis" necessary to reject that argument. *Id.* at 157. The records never became State Department "records" because "[t]he papers were not in the

control of the State Department at any time," were "not generated in the State Department," "never entered the State Department's files," and "were not used by the Department for any purpose." *Id.*; *see also id.* ("If mere physical location of papers and materials could confer status as an 'agency record' Kissinger's personal books, speeches, and all other memorabilia stored in his office would have been agency records subject to disclosure under the FOIA.").

*Tax Analysts* involved judicial opinions that were publicly available but were onerous (at that time) to obtain directly from the issuing courts. 492 U.S. at 146–47. Unlike in *Kissinger*, where the transcripts remained among Secretary Kissinger's "personal materials" even if "physically located at the agency," the Supreme Court in *Tax Analysts* concluded that DOJ did "control" the copies of the judicial opinions at issues there. That was because "the control inquiry" does not depend upon the agency's "power to alter the content of the materials it receives." *Id.* at 147. Nor does it "turn" on whether "the creator of a document" intended for the agency to rely upon it, as FOIA contains no "*mens rea* requirement" (though as discussed below it does in part turn on whether the creator of the document intended for the document to remain confidential). *Id.* Instead, the Supreme Court in *Tax Analysts* held that "[b]y control we mean that the materials have come into the agency's possession *in the legitimate conduct of its official duties*." *Id.* at 145 (emphasis added).[6]

[6] As reflected in the analysis herein, *Tax Analysts* implied some overlap between the "control" and "obtain" prong. It refers to documents acquired in the course of "official" duties when defining "obtain," but also states that "control" involves looking to whether the documents were acquired "in the legitimate conduct of [the agency's] official duties." *Tax Analysts*, 492 U.S. at 144–45. There may (or may not) be a difference between whether an agency acquired a document "officially" versus whether it acquired a document "legitimately"; there is scant caselaw on the topic. Regardless, as detailed in

The parties here have identified no Fourth Circuit (or District of Maryland) caselaw addressing the meaning of "control" in the agency record analysis. Instead, the parties mostly cite case law from the District of Columbia's federal courts, which have developed a significant body of FOIA caselaw.

Those courts apply the following four-factor test to determine whether an agency controls a document. That test requires considering:

> [1] the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the record as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files.

*Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 218 (D.C. Cir. 2013). These considerations are commonly referred to as the "*Burka* factors." *See Burka v. U.S. Dep't of Health & Human Servs.,* 87 F.3d 508, 515 (D.C. Cir. 1996); *see also Zeigler v. United States Dep't of Agric.–Farm Serv. Agency*, Case No. 19-cv-2633-RBH, 2021 WL 4155260, at *8 (D.S.C. Sept. 13, 2021) (adopting the *Burka* factors).

But the D.C. Circuit has held that "the standard, four-factor control test does not apply to documents that an agency has either obtained from, or prepared in response to a request from, a governmental entity not covered by FOIA[,]" as such matters can involve "special policy considerations." *Jud. Watch*, 726 F.3d at 221. These cases often involve documents obtained from Congress or the Office of the President, which are not subject to FOIA's disclosure rules. In consideration of separation-of-power concerns that the disclosure of such documents could raise, the first two *Burka* factors—"the

---

this section, DOJ's motion will be denied at this stage because there are genuine factual disputes regarding both the "obtain" and "control" prongs of the analysis.

intent of the document's creator" and "the ability of the agency to use and dispose of the record"—become "effectively dispositive" in such cases. *Id.* at 221. Courts applying this test look particularly to whether the creating entity "manifest[ed] an intent to retain control over documents *either* when the documents are created *or* when the documents are transmitted to an agency." *Am. Civ. Liberties Union v. C.I.A.*, 823 F.3d 655, 664 (D.C. Cir. 2016). "[E]xternal indicia of control or confidentiality on the face[] of the document[]" are particularly relevant to this analysis. *Id.* at 664 (quoting *Paisley v. C.I.A.*, 712 F.2d 686, 694 (D.C. Cir. 1983), *opinion vacated in part*, 724 F.2d 201 (D.C. Cir. 1984)). But purely "post-hoc objections to disclosure" by the non-FOIA entity that created the document "cannot manifest [a] clear assertion of . . . control." *United We Stand Am., Inc. v. I.R.S.*, 359 F.3d 595, 602 (D.C. Cir. 2004).

Multiple federal courts have adopted the D.C. Circuit's approach to "control," both in standard cases and those involving documents obtained by FOIA-subject agencies from non-FOIA government entities. *See, e.g.*, *Behar v. U.S. Dep't of Homeland Sec.,* 39 F.4th 81, 90 (2d Cir. 2022) ("To determine whether an agency exercises control over documents obtained from an entity not covered by the FOIA, we ask whether 'the non-covered entity . . . has manifested a clear intent to control the documents, such that the agency is not free to use and dispose of the documents as it sees fit.'") (quoting *Doyle v. United States Dep't of Homeland Sec.*, 959 F.3d 72, 77–78 (2d Cir. 2020) (internal quotations omitted)); *Reich v. U.S. Dep't of Energy*, 811 F. Supp. 2d 542, 545 (D. Mass. 2011) (adopting the *Burka* factors).[7]

[7] The Ninth Circuit has questioned whether the first *Burka* factor ("the intent of the document's creator to retain or relinquish control over the records") is consistent with the Supreme Court's admonition in *Tax Analysts* that whether a document was

The critical question for determining whether DOJ "controls" the document at issue here is whether the judge who authored the memorandum—a member of the federal judiciary who attended the March 2025 meeting of the Judicial Conference—"manifest[ed] an intent to retain control over [the] document[] *either* when the document[] [was] created *or* when the document[] [was] transmitted to [DOJ]," *ACLU*, 823 F.3d at 664, or as the Second Circuit has put it, whether the judge "manifested a clear intent to control the documents, such that [DOJ] is not free to use and dispose of the documents as it sees fit," *Behar*, 39 F.4th at 90; *see also ACLU*, 823 F.3d at 664 (D.C. Cir. 2016) ("In sum, if 'Congress has manifested its own intent to retain control, then the agency—by definition—cannot lawfully 'control' the documents.'").

With respect to this element of the analysis, the current record strongly supports DOJ's position. The Brinkmann Declaration asserts that the document was written by a federal judge, pertains to internal Judicial Conference business, and was not disseminated widely within the judiciary. ECF No. 21-2 ¶¶ 14, 20. The most logical inference from these facts is that the authoring judge did not intend for the memo to be

"prepared substantially to be relied upon in agency decisionmaking" is not relevant to the "control" analysis. *See Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 409 (9th Cir. 2019); *Tax Analysts*, 492 U.S. at 147. The Ninth Circuit instead emphasizes, for purposes of the "control" inquiry, how the agency *used* the documents it obtained, particularly whether they were used in the course of official agency business or relied upon in agency decision-making. *See Rojas*, 941 F.3d at 409. But *Rojas* did not involve documents that were, as here, transmitted from one agency that Congress excluded from FOIA to an agency that Congress did include within FOIA. Instead, the documents at issue in *Rojas* were unquestionably the agency's own documents (there, an email account of an FAA official). Thus, regardless of *Rojas*'s criticism of *Burka* factor #1 in that context, that criticism has little if any bearing where, as here, a document was created by a non-FOIA agency (here, the judiciary) but ended up in the possession of a FOIA-subject agency (here, DOJ).

disclosed to DOJ. In addition, counsel for the AOUSC maintains that Attachment A was not meant for disclosure outside the judiciary, *id.* ¶ 18, explaining that "the Judicial Conference at large would be the only entity that could approve its official release, and that it is the view of the AOUSC that the document is not an Executive Branch record subject to FOIA disclosure, but rather, a judicial record that remains under the control of the Judicial Branch." *Id.* ¶ 19. And although courts generally do not rely on "post-hoc objection[s] to disclosure," *see ACLU*, 823 F.3d at 664, the Brinkmann Declaration conveys that there was never any clearly manifested intent, either by the author of the memorandum or by the judiciary, to authorize public disclosure; to the contrary, the memorandum was "a Judiciary document on its face" and "discusses matters internal to the Judicial Conference[.]" ECF No. 21-2 ¶ 14.

In the face of that evidence, Res Ipsa says that deciding the question of intent at this time would be premature, for reasons similar to why deciding whether DOJ "obtained" the document within the meaning of FOIA would be premature, as discussed above. Res Ipsa points out, for example, that this Court has not seen the memorandum at issue (which is true) and that there is no declaration in the record directly from the AOUSC (which is also true; the declaration is from Ms. Brinkmann, describing a conversation with AOUSC counsel). Res Ipsa also points out, correctly, that DOJ has the burden of proof on the "agency record" question—and is the party that has moved for summary judgment on that question. *See Tax Analysts*, 492 U.S. at 142 n.3. Even in FOIA cases, such unresolved factual questions can be the proper subject of discovery. *See Goldner*, 293 F. Supp. 3d at 544 ("As in any review of a summary judgment motion, if sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then the motion should be denied."); *Ethyl Corp.*, 25 F.3d at 1250

(vacating the district court's order granting summary judgment to the government in a FOIA case where the requesting party "raised significant factual questions").

At the summary judgment stage, in other words, the Court is not permitted simply to choose the likeliest conclusion that the evidence permits. Instead, the Court must construe the evidence in the light most favorable to Res Ipsa as the non-movant, particularly given that DOJ bears the burden of proving that the memorandum is not a DOJ "agency record." Through this lens, the evidence does not necessarily foreclose the inference that Attachment A's author intended for DOJ to obtain and use the document, and/or had no opinion regarding DOJ's actions. DOJ is correct that FOIA cases are typically resolved upon agency declarations and that such declarations are entitled to a presumption of credibility. *See* ECF No. 40 at 6–9. But regardless of whether deference is available or appropriate, dispositive factual issues remain even accepting the statements in the Brinkmann Declaration. The Brinkmann Declaration does not state that Attachment A itself bore explicit warnings regarding confidentiality or non-disclosure. And the fact that the document apparently made its way to DOJ through informal means could be construed to support the inference that Attachment A's author did not "manifest an intent to retain control over [the] document" either when the author transmitted the document to its initial recipients or when someone transmitted it to DOJ. *See ACLU*, 823 F.3d at 664.

Moreover, as discussed above, there is no evidence in the record about how DOJ acquired the document. That question pertains most directly to whether DOJ "obtained" the document for FOIA purposes, discussed above—but it also pertains to the "control" analysis. *See Tax Analysts*, 492 U.S. at 145 ("By control we mean that the materials have come into the agency's possession *in the legitimate conduct of its official duties*.")

(emphasis added); *and compare Rojas*, 941 F.3d at 409 ("[A]gency records may include documents used by agency employees in connection with agency business, even if the employees were engaging in misconduct."), *with Marzen v. U.S. Dep't of Health & Hum. Servs.*, 632 F. Supp. 785, 797 (N.D. Ill. 1986) ("The Court finds the notion that every member of the public may have access to otherwise unobtainable records through the vehicle of a FOIA request to a governmental agency that had no legal authority to obtain the records in the first place to be abhorrent."), *aff'd sub nom. Marzen v. Dep't of Health & Hum. Servs.*, 825 F.2d 1148 (7th Cir. 1987). Based on the evidence in the record, neither DOJ nor the AOUSC has been able to determine how the document ended up in DOJ's possession. But that means this Court also is unable to determine whether DOJ "c[a]me into the agency's possession in the legitimate conduct of its official duties," which the Supreme Court held in *Tax Analysts* is generally necessary to decide in determining whether DOJ "controlled" the document at the time of Res Ipsa's FOIA request. 492 U.S. at 145.

To be clear, the Court need not and does not decide at present whether an agency lacks control over a document that it, for example, lacked "legal authority to obtain," *Marzen*, 632 F. Supp. at 797. Res Ipsa has moved for partial summary judgment on its expedited processing request alone; DOJ is the only party that has moved for complete relief. Accordingly, the Court only decides at this juncture that, construing the limited record in the light most favorable to Res Ipsa, there remains genuine disputes of material fact, including with respect to whether Attachment A was acquired through legitimate means and regarding the author of Attachment A's intent regarding control and disclosure.

* * *

For these reasons, the Court concludes that (a) Res Ipsa's complaint, when assumed to be true, plausibly alleges that Attachment A is an agency record and (b) the factual record at this stage, when construed in the light most favorable to Res Ipsa, poses at least a genuine issue of material fact as to whether Attachment A is an agency record. Thus, whether the "agency record" question is jurisdictional or not, the Court will deny DOJ's motion and allow the parties to proceed to limited discovery. The Court will therefore direct the parties to confer and propose a plan for limited discovery and/or in camera review with respect to DOJ's "control" over Attachment A (as well as with regard to whether/how it "obtained" the document as discussed above).

**C. Expedited processing**

At an earlier stage of the case, before receiving OIP's denial of its FOIA request, Res Ipsa moved for partial summary judgment on its expedited processing claim only. ECF No. 6. That motion is now moot.

FOIA provides that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). DOJ's December 2025 denial letter (ECF No. 21-2) constituted its "complete response" to Res Ipsa's FOIA request. *See* ECF No. 40 at 4–5 (collecting cases); *see also Espinoza v. Dep't of Justice*, 20 F. Supp. 3d 232, 247 (D.D.C. 2014) (finding an expedited processing claim moot because the agency had already "rendered a final decision" on the FOIA request); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) ("[T]he only relief required by the FOIA with regard to expedited processing is moving an individual's request 'to the front of the agency's processing queue.'") (quoting *Leadership Conference on Civil Rights v. Gonzales,* 404 F. Supp. 2d

246, 259 (D.D.C. 2005)). As the decision of whether Attachment A is subject to FOIA now rests with this Court pursuant to Res Ipsa's lawsuit, Res Ipsa has already exhausted agency processing of its request.

Res Ipsa contends that its motion is not moot because it remains an open question whether DOJ can be ordered to produce Attachment A in an expedited fashion, assuming the Court eventually decides that Attachment A is an agency record subject to FOIA. But if the Court does so decide, it will order DOJ to produce the document and provide for a schedule in its order. *See Muttitt*, 926 F. Supp. 2d at 296 (after an agency has responded to a FOIA request and requestor has sued, "the timing of any further processing of an individual's request (either expeditiously or otherwise) necessarily occurs at the direction of the court—pursuant to a scheduling order, not the expedited processing provision of the FOIA"). That question, if reached, will be a question for the Court to decide in its exercise of discretion over deadlines for compliance with such order, not by the expedited processing rules within the FOIA statute itself.

Accordingly, Res Ipsa's motion for partial summary judgment is denied as moot.

## IV. CONCLUSION

For the reasons explained above, the Court will deny DOJ's motion to dismiss or in the alternative for summary judgment and direct the parties to provide proposals for limited discovery. A separate order follows.

Date: September 14, 2026

/s/
Adam B. Abelson
United States District Judge