**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RES IPSA MEDIA, LLC<br>d/b/a LAW AND CHAOS PODCAST,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | * * * * * * * * * * * | Civil Action No. 1:25-cv-02866 (ABA) |

* * * * * * * * * * * * *

**PLAINTIFF'S STATUS REPORT**

Plaintiff Res Ipsa Media, LLC, d/b/a Law and Chaos Podcast ("Law and Chaos") respectfully responds to the Court's 14 September 2026 Order regarding limited discovery. Despite the Court's direction for "the parties to confer and propose a plan for limited discovery and/or in camera review" (Mem. Op., Dkt. #43, at 32 (filed Sept. 14, 2026) [hereinafter Disc. Op.]), which clearly indicated the Court's intention for the parties to confer and *jointly* file *a* status report (*see also* Order, Dkt. #44 (Sept. 14, 2026)), Defendant Department of Justice ("DOJ") merely *informed* Law and Chaos of its decision to submit supplemental declarations, and when Law and Chaos attempted to negotiate, DOJ unilaterally filed its own status report over Law and Chaos's objections. (Def's Stat. Rep. & Disc. Prop., Dkt. #46, at 3 (filed Sept. 28, 2026) [hereinafter DOJ's Rep.].) Law and Chaos now reluctantly submits this competing status report in response and apologizes to the Court for the Government's premature and unsolicited filing.

Law and Chaos's position on this matter is simple: the Court authorized it to propound *discovery* to ascertain how it obtained Attachment A and whether it has control of that record.

(Disc. Op. at 32.) The Court pointedly did *not* authorize DOJ to simply file more unspecified declarations describing in greater detail how its previous search was conducted. A new declaration describing that search in greater detail (DOJ's Rep. at 2) will not change the fact that it was unable to locate the information the Court needs, and for which it authorized limited discovery. Only Law and Chaos's approach will elicit the answers that the Court needs.

As demonstrated in the email chain attached to DOJ's Status Report, Law and Chaos attempted to negotiate on the declaration proposal and did not reject the proposal outright, even though it now argues herein that declarations are an insufficient substitute for actual discovery. While Law and Chaos desired not to further burden the Court with a discovery dispute, it still could not consent to DOJ's "black box" approach to the declarations, neither stating who the declarants would be nor agreeing that they would address the lingering questions left unresolved by the previous declarations (or even committing to the declarants having personal knowledge of the matters about which they would be testifying). With apologies to the Court, Law and Chaos respectfully maintains that its desire to have some degree of informed input into the identities of the prospective declarants and what issues they will address is reasonable under the circumstances, and it urges the Court not to accept DOJ's proposal.

With that said, declarations are not discovery, and while Law and Chaos was willing to agree to DOJ's proposal with certain conditions in the interest of avoiding further conflict, it now asks the Court to reject DOJ's proposal in its entirety in favor of a more traditional discovery proposal. Law and Chaos asks the Court to: (1) order DOJ to provide certain records to it *in camera* and *ex parte*; and (2) authorize Law and Chaos to issue ten interrogatories and one document request, and to conduct two depositions.

With respect to *in camera* review, Law and Chaos requests that the Court order DOJ to submit all copies of Attachment A to it *in camera* and *ex parte*. While Law and Chaos is only seeking public release of the final page of Attachment A, the Court should review the entire document for any indicia that the author did or did not intend for it to be shared. Additionally, the Court should review any *other* copies of Attachment A in DOJ's custody. DOJ's previous declarant testified that "the document bore no indicia that the Department modified the document in any way. (Brinkmann Decl., Dkt #21-2, ¶ 14 (filed Jan. 30, 2026).) However, she did not testify that all the *other* copies retained their virgin judicial character. If other copies exist which bear annotations, handwritten notes, or other markings, that would indicate that DOJ exercised a degree of control over the record that Ms. Brinkmann had attempted to obfuscate. Additionally, even if *all* the copies of Attachment A are pristine, the mere fact that multiple copies exist would demonstrate that DOJ did not refrain from sharing this allegedly judicial document over which it lacked control. In other words, the more copies exist, the more control DOJ believed it had.

With respect to the interrogatories, Law and Chaos proposes the following ten questions, which must be answered under penalty of perjury:

- Interrogatories for the Judiciary
  - Does the author of Attachment A object to the public release of the last page of Attachment A?
  - Please describe how widely the author disseminated Attachment A.
  - Please identify all restrictions the author placed on recipients regarding further dissemination of Attachment A.
  - Did the AOUSC counsel who spoke with Ms. Brinkmann obtain the author's permission to object to Attachment A's release on their behalf?

- Interrogatories for DOJ
  - Please *internally* identify all individuals involved in the planning and drafting of the ethics complaint against Chief Judge Boasberg. These individuals will henceforth be known as "the Complaint Staff." *This is not a separate interrogatory, but merely a definition.*
  - Please describe all knowledge the Complaint Staff has regarding how Chad Mizelle obtained Attachment A, how the person who provided it to him obtained it, how that person obtained it, etc., until you have exhausted the knowledge of the Complaint Staff regarding the path Attachment A took before it ended up in Mr. Mizelle's possession.
  - Please identify all NARA-approved records control schedule(s) which apply to any copies of Attachment A in the custody of DOJ.
  - Please identify any non-Government individuals to whom any person in the Office of the Attorney General or the Complaint Staff described or provided a copy of either the ethics complaint or Attachment A, and explain the nature of the communication.
  - Please describe any directions given to custodians of any copy of Attachment A regarding its handling, dissemination, or disposal.
  - For each of the copies of Attachment A provided *in camera* and *ex parte*, please identify where it was located, whether it was the copy originally identified in this case, and whether it contains any additional markings.

- Please identify any copies of Attachment A which have been destroyed since it was obtained by DOJ, stating where each copy was located prior to its destruction.

With respect to the document request, Law and Chaos simply asks that any records upon which DOJ relies when answering the interrogatories be provided to it at the same time as the interrogatory response. This applies to both agency records and any allegedly personal records (such as Signal chats on personal devices), since they were, by definition, agency records due to their use for Government business.[1]

Regarding Law and Chaos's deposition requests, Law and Chaos requests leave to conduct a deposition of the senior-most member of the Complaint Staff who remains at DOJ,[2] as well as formal leave to issue a third-party subpoena to Mr. Mizelle, who is no longer a Government employee. These depositions would be limited to questions about: (1) Attachment A and how it came into DOJ's possession; and (2) how DOJ employees treated the record once they obtained it.

The Court should authorize the above requested discovery and direct responses to the proposed written discovery to be returned within twenty-one days, and for depositions to be conducted within fourteen days of the completion of written discovery. This discovery request is narrowly tailored to elicit information which will aid the Court in its final determination regarding the nature of Attachment A and will not unduly prejudice DOJ due to its limited scope.

---

[1] Similarly, DOJ should not be allowed to refuse to review any records which contain information responsive to an interrogatory simply based on an allegation that it is not an agency record.

[2] To clarify, "senior-most member of the Complaint Staff" does not mean the member of the Complaint Staff who is currently the highest ranking, but rather the highest-ranking member *at the time of the complaint's drafting* who is still a DOJ employee. DOJ should be required to identify this person and make them available for deposition.

It will ensure that the Court is not asked again to make a decision based solely on conclusory claims in agency declarations, as well as removing the question of whether DOJ is entitled to a presumption of regularity—which supports both arguments equally—from the equation.

Date: September 28, 2026

Respectfully submitted,

/s/ Kelly B. McClanahan

Kelly B. McClanahan, Esq.
MD Bar #31832
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD 20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*